## ANN E. ADAMS v. W. J. BLEAKLEY.

ERROR TO THE COURT OF COMMON PLEAS OF VENANGO
COUNTY.

Argued October 4, 1887—Decided October 17, 1887.

1. In an action of ejectment, involving the title of a wife as against the creditors of her husband, it is not error to charge the jury that, if they find the husband was largely indebted at the time of the conveyance to his wife and it is not proven by full, clear and rigid proof that the purchase money was paid out of her separate estate, the property was liable to be sold as the property of the husband to pay a debt due at the time of the conveyance.

2. When the marriage relation has been terminated by a divorce, the former husband is a competent witness against his former wife to testify to matters as to which his knowledge was not acquired by confidential communications during the marital intercourse.

3. In an action of ejectment, involving the title of a sheriff's vendee of land sold by process upon a judgment entered upon a bond alleged to

be fraudulent and void, the assignee of the bond for whose use the judgment thereon was entered, called to sustain the validity of the bond and judgment, is not within the proviso to the act of April 15, 1869, and is competent to testify though the assignor of the bond be dead.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 81 October Term 1886, Sup. Ct.; court below, No. 40 January Term 1885, C. P.

This was an ejectment by W. J. Bleakley against Ann E. Adams, to recover an inlot in the city of Franklin, on which were a two-story dwelling and other buildings, brought on January 6, 1885. On April 27, 1885, Simpson Horner was added as a defendant.

The record title of the property in dispute accrued to the respective parties to the suit as follows:

On April 19, 1885, Josiah Adams, the husband of Ann E. Adams, executed to Thomas Daft, his father-in-law, with whom he had been in business, a judgment bond in $9,600, conditioned for the payment of $4,800 with interest, on May 1, 1856; which bond on the day of its date was assigned by Thomas Daft to Simpson Horner, whose wife was a sister of Mrs. Ann E. Adams. On May 11, 1858, judgment was entered on said bond in favor of Thomas Daft for use of Simpson Horner.

On March 6, 1865, Charles H. Raymond conveyed the property in dispute to Mrs. Ann E. Adams, the deed being recorded on January 20, 1868. At this time the husband was indebted to persons other than to Horner on the Daft bond, among whom was P. S. Weaver, who had recovered a judgment against him in Allegheny county in 1860.

The judgment of Thomas Daft for use of Simpson Horner was revived from time to time, and on August 22, 1872, the property in suit was sold as the property of Josiah Adams on an execution issued on said judgment, and purchased by Simpson Horner who received a sheriff's deed therefor acknowledged August 29, 1872. Mrs. Adams in 1881, instituted proceedings for a divorce from her husband on account of ill treatment, and obtained the verdict of a jury in her favor on February 13, 1882. Simpson Horner, then a party defendant, on September 1, 1885, conveyed all his interest in the property to Mrs. Adams.

An exemplification of the Allegheny county judgment in favor of P. S. Weaver against Josiah Adams was carried to Venango county and judgment entered thereon in 1869. This judgment was revived and in 1884, upon an execution issued thereon, a sale of the property was made to W. J. Bleakley, who received the sheriff's deed acknowledged November 28, 1884, and who brought this ejectment on January 6, 1885.

The plaintiff claimed to recover on the grounds (1) that Josiah Adams was in debt to a large amount at the time of the conveyance by Raymond to Mrs. Adams; that the consideration for said conveyance was in fact paid by him, and the title in his wife was fraudulent and void as to the then existing creditors; and (2) that the bond and the judgment thereon from Josiah Adams to Thomas Daft and assigned to Simpson Horner was without consideration, was given and kept alive for the purpose of hindering and delaying creditors, and the sale thereon was therefore void.

On the trial, on March 16, 1886, before CHARLES E. TAYLOR, P. J., the plaintiff, having introduced evidence showing an indebtedness of Josiah Adams in 1865, the date of the Raymond conveyance to his wife, to a large amount, called Josiah Adams as a witness, who testified that he had been the husband of Mrs. Adams, but that the marriage was dissolved by a decree in divorce about four years before. The defendant objected to his competency.

The court: We will admit him to testify as to any matter not obtained through confidential communication or in consequence of the domestic relation.[2]

The witness then testified that at the time of the Raymond conveyance he was indebted about $5,000. It was then shown that Thomas Daft died in 1864. C. H. Raymond, the grantor of said conveyance, testified that the purchase of the property had been made by Josiah Adams, who had paid the consideration and directed the deed to be made to his wife. Mr. Adams was then recalled, and having testified that out of his own funds he had paid the purchase money for the property conveyed by Raymond and he was then insolvent, proceeded to impeach the bond given by him to Thomas Daft and the judgment entered thereon for use of Simpson Horner, stating inter

alia, that the bond had been sent to him by Mr. Horner, with a power of attorney to satisfy the judgment entered on it; that he had confessed the original judgment or had it done, and the several revivals thereof, for the purpose of hindering, delaying and defrauding his creditors. The defendant again objected to the competency of Mr. Adams as to anything between himself and his wife, and as to any facts transpiring during the marriage; and also on the ground that, Mr. Daft being dead, witness was incompetent to testify to anything in relation to any conversation happening prior to Mr. Daft's death. The court overruled the objection; exception.[3]

On the part of the defendant, the wife testified in her own behalf that she had a separate estate of her own; had the title to two lots in Franklin in her own name, and several thousand dollars in addition, the amount she could not state; and that in the purchase of the Raymond property her husband had used her money and estate. The defendant offered the deposition of Simpson Horner, taken under a rule on October 17, 1885, wherein the witness had testified inter alia that the bond of Josiah Adams before referred to had been transferred to him by Thomas Daft, the obligee, in payment of an indebtedness existing at the time of the assignment, and that Josiah Adams always recognized the bond as a valid obligation; that he did not recollect whether he personally had entered judgment on the bond or not; that Mr. Adams had had it revived once at least and the judgment was the first lien on the property; the property was sold upon the judgment and he had given to Mrs. Adams a deed for it and several hundred dollars besides, because she was in poor circumstances at the time. The plaintiff objected to the reading of the deposition as incompetent, because the testimony related to matters that were prior to the death of Mr. Daft.

The court: We will rule out the deposition except so far as the testimony relates to matters occurring since the death of Mr. Daft; exception.[4]

The defendant then offered to read that part of Mr. Horner's deposition in reference to the assignment of the judgment to him, for the purpose of contradicting Josiah Adams. The plaintiff objected.

The court: We will rule out the offer.[5]

Defendant's Points.

The following are the points presented with the answers of the court thereto :

The plaintiff's points :

1. That there is no evidence in this case on the part of the defendant, to submit to the jury, to show that the property in question was purchased from Raymond with her separate money or estate.

Answer : We submit this question to the jury.

2. That the jury must find from clear and full proof that the property in question was paid for with her own separate funds derived from some other source than from her husband ; otherwise it would be liable to be sold to pay a debt due at the time of said conveyance.

Answer : Affirmed, as regards the title claimed under the deed from Raymond.[6]

3. That if the jury find from the evidence that Josiah Adams was largely indebted in March, 1865, and it is not proven by full, clear and rigid proof that the property was paid for by Mrs. Adams out of her separate funds, it was liable to be sold as the property of Josiah Adams to pay a debt due at the time of said conveyance.

Answer : Affirmed, with the same addition as the preceding point.[7]

4. That if the jury find that the judgment of Daft was given to Adams for his own use by Daft, with knowledge of Horner, with power to satisfy the same, and it was kept alive for the purpose of hindering, delaying and defrauding creditors of Adams, of which P. S. Weaver was one (and this was known to Horner), it was void as against said last creditor, and a sale under said Daft judgment would pass no title as against the P. S. Weaver judgment.

Answer : Affirmed, as far as regards the title claimed under the sheriff's sale.[8]

The defendant's points :

1. If the jury find from the evidence that the premises in question were purchased by the husband of Ann E. Adams, and conveyed to her at his request by Raymond ; and that Josiah Adams was solvent at the time ; that he then had means sufficient, in money or property, to pay all his debts then existing, including the purchase of this house and lot,

then Ann E. Adams took a good title to the property so conveyed, and the plaintiff cannot recover in this action.

Answer: Affirmed, if you further find that such property or effects of Adams were not so concealed or held that creditors could not have collected their claims.[9]

2. If the jury find from the evidence that the consideration paid for the house and lot was furnished by Ann E. Adams from money received by her from Simpson Horner, or any person other than her husband, she acquired a good title to the same whether her husband was indebted at the time or not, and the verdict should be for the defendants.

Answer: Affirmed, with this addition, if the jury find the facts assumed in the point, from full, clear and satisfactory evidence.[10]

3. The presumption of law is that the bond or obligation given by Josiah Adams to Thomas Daft was honestly given for good and sufficient consideration; and, to overcome such presumption, the burden of proof is upon the plaintiff to satisfy the jury, by clear and satisfactory evidence, that the judgment was not honestly given and that Thomas Daft, in taking said obligation, was a co-conspirator with Josiah Adams to assist him in defrauding his creditors, and if the jury are not so satisfied, their verdict should be for the defendants.

Answer: Affirmed, with this qualification, that instead of "clear, and satisfactory evidence," the words should be, "that the burden of proof is upon the plaintiff." [11]

4. If the bond given by Adams to Thomas Daft was given for an honest indebtedness at the time, and Thomas Daft so received it, the judgment afterwards entered upon it was a valid judgment; and the plaintiff having caused a sale to be made of the premises in question thereon, the sheriff's vendee took a good title to the same at such sale, and the plaintiff cannot recover in this action.

Answer: Affirmed, unless the defendant, Adams, with the consent and knowledge of the plaintiff, used the same for the purpose of hindering, delaying, or defrauding creditors, of which the plaintiff was one.[12]

5. Fraud is never to be presumed, but must be clearly and satisfactorily proved by the party alleging it; and where the

Defendant's Points.

evidence relied upon to establish the alleged fraud consists largely of the testimony of a confessed conspirator in the alleged fraud, the jury should carefully consider the amount of credit to be given to such witness, who alleges that he caused to be put upon record a falsehood for the purpose of defrauding or delaying his creditors.

Answer: Affirmed, with the substitution of the words, "burden of proof," in place of "clear and satisfactory." [13]

6. If the jury believe from the evidence that the plaintiff, Bleakley, pursuant to an arrangement, made use of the judgment in favor of Weaver for the purpose of collecting a debt contracted after the conveyance by Raymond to Mrs. Adams, and that pursuant to such arrangement the plaintiff is to pay somebody five hundred dollars, and nothing if he fails to recover the property, he is not such a creditor as is entitled to question the title of Mrs. Adams, and such a plaintiff as is entitled to recover against her.

Answer: Affirmed, if Bleakley was only a creditor in virtue of the Weaver judgment.[14]

7. No one can question the title to the property in suit acquired by Mrs. Adams from Mr. Raymond in 1865 but a creditor of Josiah Adams existing at the time of said conveyance to Mrs. Adams; the plaintiff was not such a creditor, and on the facts testified to by him, he can derive no equity in support of this action under the judgment of Weaver.

Answer: Affirmed, with the same addition as the last point.[15]

8. If the judgment in favor of Horner was honest he had a right after a sale of property on the judgment and purchase thereof by him, to do with such property as he saw proper, and if he gave it or any part of it to Mrs. Adams he had a right to do so, and such gift is no evidence of fraud.

Answer: Affirmed, if the judgment was used only for honest purposes, and the sale made to pay an honest existing debt.

The jury found a verdict for the plaintiff, and judgment was entered. Thereupon the defendant took this writ and assigned for error, inter alia:

2, 3. The admission of Josiah Adams to testify.[2][3]

4, 5. The refusals of the deposition of Simpson Horner.[4][5]

6–8. The answers to the plaintiff's points, 6 to 8

9–15. The answers to the defendant's points, 9 to 15

*Mr. J. H. Osmer*, for the plaintiff in error:

1. At common law neither husband nor wife was competent for or against each other: 1 Wh. Ev., § 423; Snyder v. Snyder, 6 Binn. 488; Pringle v. Pringle, 59 Pa. 281; 1 Greenl. Ev., §§ 335, 336, 337; Hitner's App., 54 Pa. 110; and this extends to cases where the marriage is dissolved by divorce or death: Taylor Ev., Text Book Series, 782; Barnes v. Camack, 1 Barb. S. Ct. 392. The incompetency to testify against each other was not removed by the act of 1869. Though they may testify for each other: Rowley v. McHugh, 66 Pa. 269; they may not testify against each other: Yeager v. Weaver, 64 Pa. 425; Alcorn v. Cook, 101 Pa. 209; 1 Wh. Ev., §§ 430, 478; Taylor v. Kelly, 80 Pa. 95; Brock v. Brock, 116 Pa. 109.

Adams and Daft were the only parties to the bond the integrity of which was attacked. Daft died in 1864, and Adams was excluded as a witness by the act of 1869: Karns v. Tanner, 66 Pa. 297; Arthurs v. King, 84 Pa. 525. The admission of Adams who was a party to the bond, and the exclusion of Horner who was not, left the case so far as the bond was concerned completely in the hands of Adams.

2. Simpson Horner was a competent witness. Neither the bond given by Adams to Daft nor the judgment thereon was the thing or contract in action. Their validity was a collateral question. The question at issue was the title to the land. Horner had no interest in the suit, as·he had conveyed his interest to Mrs. Adams, and was therefore competent: Warren v. Steer, 112 Pa. 634; Thomas v. Maddan, 50 Pa. 261.

3. The court below required of the defendant a measure—a conclusiveness of proof unknown to the law in any other class of cases, civil or criminal. What is "clear, full and rigid proof" short of absolute demonstration? This language was used in Keeney v. Good, 21 Pa. 349, and Aurand v. Schaffer, 43 Pa. 363, to emphasize the law that a wife, to sustain a title acquired under such circumstances, must not only prove by clear and satisfactory evidence that she had a separate estate, but that her own separate means were used in the acquisition of

the property in question: Baringer v. Stiver, 49 Pa. 129; Benson v. Maxwell, 105 Pa. 274; Kaine v. Weigley, 22 Pa. 179.

4. The plaintiff was not a creditor of Adams. Only by virtue of the sheriff's sale under the Weaver judgment could he question the defendant's title. The presumption was that the bond given to Daft was honest, and when merged in the judgment was final and conclusive, as to the defendant at least: Blystone v. Blystone, 51 Pa. 373; Hopkins v. West, 83 Pa. 109; and the wife, being the grantee of the sheriff's vendee, was entitled to the instruction prayed for in the third, fourth and fifth points: 1 Wh. Ev., § 933; Martin v. Berens, 67 Pa. 460; Penn. R. Co. v. Shay, 82 Pa. 198.

*Mr. J. W. Lee*, for the defendant in error:

1. The marriage relation having ceased by the divorce, the husband was admissible for or against his former wife as to information not derived confidentially during the marital intercourse: Wh. Ev., § 429; Wells v. Tucker, 3 Binn. 366; Gebhart v. Shindle, 15 S. & R. 235; Thomas v. Maddan, 50 Pa. 261; Robb's App., 98 Pa. 501.

2. Adams was a competent witness before the act of 1869. He was not a party to the record and was not interested in the result. It never has been a ground of exclusion that some one was dead who might have testified to a different state of facts than that which the witness was offered to prove: Warren v. Steer, 112 Pa. 634. This authority sustained Henry Davis as a witness, because not a party, nor interested, and excluded Steer, who was a party and interested. For the same reason the deposition of Simpson Horner was properly excluded.

3. The ruling of the court below as to the character of the evidence required to sustain the wife's title as against her husband's creditors is abundantly sustained: Gamber v. Gamber, 18 Pa. 363; Keeney v. Good, 21 Pa. 349; Aurand v. Schaffer, 43 Pa. 364; Kingsbury v. Davidson, 112 Pa. 380.

4. P. S. Weaver was a creditor who was hindered, delayed and defrauded by the Daft judgment. It would be useless to say that Weaver as a creditor could challenge the fraud, unless the purchaser at the sheriff's sale upon his judgment would be equally protected from the fraud when found by a jury.

OPINION, MR. JUSTICE WILLIAMS:

Ann E. Adams, the defendant below, claimed title to the lot of land in controversy in this case, under a deed made to her on the 6th March, 1865, by Charles H. Raymond. She alleged that the consideration money was paid by her and was derived wholly from her own separate estate. She also claimed to hold any title which her husband, Josiah Adams, acquired under the deed from Raymond by means of a sheriff's sale of the lot as his property, which had been made in 1872 upon a judgment against him and in favor of Simpson Horner.

Bleakley, the plaintiff below, acquired his title by a sheriff's sale of the lot as the property of Josiah Adams, made in 1884 upon a judgment entered prior to the deed from Raymond, and which had been regularly revived. His position upon the trial below was that the purchase from Raymond was made by Josiah Adams and paid for with his money; and that the deed to Mrs. Adams, the bond to Daft upon which Horner's judgment was entered, and the sheriff's sale made thereon, were all intended to hinder or delay the creditors of Adams.

The validity of the bond, of the transfer to Horner, and the proceedings had upon the judgment, thus became an important subject of investigation. If Mrs. Adams failed to prove with the clearness the law requires of her, that the purchase money paid to Raymond was derived from her separate estate and not from her husband, her title would be left to depend wholly upon the sheriff's deed to Horner. In order to sustain this branch of her title she called Horner as a witness. He was objected to as incompetent, on the ground that Daft, by whom the bond was transferred to him, was dead. The court sustained the objection, and this ruling is the subject of the fourth and fifth assignments of error. The rule under which the witness was excluded is that where one of the parties to a contract in litigation is dead, the mouth of the other will be closed by the policy of the law. The object of the rule is to protect the interests of the deceased party from the adverse testimony of the living one. Here, the acts of the deceased assignor were attacked and Horner was called to sustain them. The plaintiff was alleging that the bond and its transfer by Daft were fraudulent; the witness was called to show that both were fair and honest. He was not within the mischief

which the rule was intended to prevent and he was therefore not excluded by it. Mrs. Adams's title depended in one aspect of her case upon the bond of Daft and the judgment entered upon it; and she had the right to the testimony of Daft, if he had been living, and of Horner, to whom he transferred it and by whom the subsequent proceedings were conducted, in order to maintain her title and show her right to the possession of the lot in controversy.

We see nothing in the other assignments of error to require particular notice and they are not sustained.

> Judgment reversed and venire facias de novo awarded.