633 A.2d 1069

**COMMONWEALTH OF PENNSYLVANIA, Appellee,**

v.

**Mary NEWMAN, Appellant.**

Supreme Court of Pennsylvania.

Argued March 10, 1992.

Decided Nov. 1, 1993.

Graydon R. Brewer, Greenfield & Associates (court-appointed), Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Kemal A. Mericli, Asst. Dist. Atty., Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

At issue in this appeal is the applicability of Act 16 of 1989, which rewrote the statutory provision dealing with spouses as witnesses against each other, 42 Pa.C.S. § 5913 (Supp.1993), and the interplay between that section and the provision dealing with confidential communications between spouses, 42 Pa.C.S. § 5914 (Supp.1993).

Mary Newman, the Appellant, was subpoenaed to testify at a coroner's inquest/preliminary hearing on November 14, 1989, concerning a charge of homicide against her husband, Kenneth Newman, arising out of the death of Raymond Little in March of 1988. The Commonwealth's offer of proof with respect to her testimony was that she was present and observed certain events involving her husband, the victim, and a co-conspirator, and that her husband had admitted to her that he struck the victim on the head with a stone. According to the Commonwealth, the Appellant had provided this information to detectives investigating the homicide. Upon her refusal to testify at the coroner's inquest, the Court of Common Pleas of Allegheny County entered an order holding her in contempt. A stay of incarceration was granted pending this appeal.

██ We must first address the Appellant's argument that Act 16 of 1989 does not apply to this case and thus 42 Pa.C.S. § 5913 as it existed before June 29, 1989, states the controlling rule. This question must be resolved at the outset, for if the Appellant is correct, she is not competent as a witness against her husband. We find no merit to this argument, however.

Prior to the passage of Act 16 of 1989, Section 5913 stated a general rule disqualifying a husband or wife from giving any testimony adverse to the spouse. It also stated several exceptions to this broad rule. One spouse could give testimony against the other in proceedings for desertion and maintenance, in cases where husband or wife was charged with threatening, attempting, or committing an act of bodily injury or violence against the spouse or any child in their care, and in cases of bigamy.

Act 16 of 1989 rewrote this section, changing it from a rule rendering one spouse incompetent to testify against the other to a rule recognizing a privilege not to testify against one's spouse. The exceptions were carried over; thus, in cases where previously an exception rendered a spouse competent to testify, now it is stated that there is no privilege in such situations. Additionally, an exception was added for cases where the charges include murder, rape, or involuntary deviate sexual intercourse.[1]

1. Section 5913 now reads

Except as otherwise provided in this subchapter, in a criminal proceeding a person shall have the privilege, which he or she may waive, not to testify against his or her then lawful spouse except that there shall be no such privilege:
(1) in proceedings for desertion and maintenance;
(2) in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them;
(3) applicable to proof of the fact of marriage, in support of a criminal charge of bigamy alleged to have been committed by or with the other; or

Thus, if Act 16 does not apply, the Appellant is incompetent to testify against her husband and no exception applies that would permit her testimony. If it does apply, she is a competent witness and she has no privilege not to testify, since "one of the charges against [her husband] includes murder."

The Appellant's argument that Act 16 does not apply is based on section 2, which states that the Act "shall apply to all criminal cases pending on the effective date" of the Act, which was June 29, 1989. The Appellant notes that the death occurred in March of 1988 and that the man charged as a co-conspirator in the crime had pled guilty prior to the adoption of Act 16. Accordingly, there was no case pending on the effective date of the Act. Indeed, argues the Appellant, the Commonwealth did not originally file charges against Kenneth Newman because without the testimony of his wife the case would have been too difficult to prove; charges were brought after the Act became effective on the belief that the Appellant could then be compelled to testify.

This argument is specious. Obviously the General Assembly intended Act 16 to apply to all cases initiated after the effective date. The "pending cases" language of Section 2 does no more than express the legislature's intention that the new rule should apply to cases already "in the system" as well. Such cases would necessarily involve criminal conduct occurring before the effective date of the Act; thus, it is clear that the legislature made a conscious decision not to limit the application of the Act to criminal conduct occurring after its effective date. Since the hearing in this case at which the Appellant was called to testify was held on November 14, 1989, the rule of 42 Pa.C.S. § 5913 as rewritten by Act 16 of 1989 controls. The Appellant is a competent witness against her husband and, because one of the charges against him is murder, she may not assert a privilege not to testify against him.

(4) in any criminal proceeding in which one of the charges pending against the defendant includes murder, involuntary deviate sexual intercourse or rape.

The Appellant also argues that it would be unfair to allow the Commonwealth to "take advantage of a potential windfall" by using the Appellant's testimony, since at the time she was interviewed by investigators (in February of 1989) it was "well known" that information obtained from her could not later be compelled in the form of testimony. We perceive no unfairness. It has always been permissible for the Commonwealth to use information obtained from one spouse to build a case against the other spouse. The competency rule, now privilege, is a testimonial one. We find it highly doubtful that the Appellant freely informed the investigators about matters implicating her husband in the crime in reliance on the assumption that it could do no harm since she could not be called to repeat the information in any formal proceeding. Even if this were the case, however, such an assumption would have been unreasonable. Subject only to constitutional limitations, the legislature is always free to change the rules governing competency of witnesses and admissibility of evidence. The application of the new rule in circumstances such as this does not constitute an *ex post facto* law. See *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), where, at the time of the homicide, a convicted felon could not be called as a witness, but before trial the law was changed, and a convicted felon testified and implicated the defendant. The Court held that the law was not *ex post facto* because it did not criminalize a previously innocent act, it did not enhance a crime previously committed, and it did not change the proof needed to obtain a conviction.

> [A]lterations which do not increase the punishment, nor change the ingredients of the offence, or the ultimate facts necessary to establish guilt, but ... only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at its pleasure.

*Id.* 110 U.S. at 589, 4 S.Ct. at 210. See also *Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898) (no

*ex post facto* violation where defendant, whose conviction was reversed because inadmissible evidence had been allowed, was convicted on retrial, the same evidence being introduced pursuant to a change in the law rendering such evidence admissible.)

■ We turn next to the principal question in this appeal, whether the Appellant may invoke the rule of 42 Pa.C.S. § 5914 in refusing to testify, even if she may not assert a privilege under Section 5913. The lower court held that "[s]ince Mary Newman's husband is charged with the crime of Murder her testimony falls within the four corners of the newly enacted exception to spousal privilege. She may not refuse to give testimony under these circumstances without being subject to a contempt order." Opinion at 2, R.7a.

At the hearing, the order had been explained as follows:

JUDGE DAUER: This Court orders Mrs. Newman to testify *as to all matters relative to this homicide.* If not, she'll be held in contempt of court and held in the Allegheny County Jail until she does testify.

MR. PARISE (counsel for the defendant): Your Honor, with respect to the issues I raised earlier regarding prior statements before the effective date of this action—

JUDGE DAUER: *All statements. Everything.*

MR. BREWER (counsel for the Appellant): Your Honor, just so we understand the basis of your ruling, are you determining that 5914 does not apply at all?

JUDGE DAUER: Of course, it applies.

MR. BREWER: 5914?

JUDGE DAUER: 5913 and 14. They're all applicable laws of Pennsylvania, but *5914 really doesn't have anything to do with that amendment because it's an exception. It's the exception to the rule.*

MR. BREWER: Only for the purpose of clarifying, because you queried the District Attorney on the point, *if he were to ask Mrs. Newman with respect to any alleged statements to her, would the Court also require that she respond to that?*

JUDGE DAUER: I think the legislature changed the law.... *Everything, any questions.... The privilege is gone by orders of the legislature of Pennsylvania.*

N.T. pp. 70–72 (emphasis added).

In *Commonwealth v. Hancharik,* 525 Pa. 654, 582 A.2d 321, 1990, filed this same day, we rejected the view that the exceptions found in Section 5913 when it was stated as a rule of incompetency also applied to Section 5914, such that a husband or wife could testify as to confidential communications because the case came within the circumstances of one of the exceptions stated in Section 5913. We noted that the two sections stated two distinct rules. The prefatory language contained in each section, "Except as otherwise provided in this subchapter," could not be read to engraft the provisions explicitly stated as exceptions to Section 5913 onto Section 5914, for to do so would result in the exception swallowing the rule, rendering Section 5914 superfluous. That language, we found, referred to Section 5915, which renders a husband or wife competent to testify, even as to confidential communications, when "the defendant makes defense at trial upon any ground which attacks the character or conduct of his or her spouse...."

We find this analysis applicable with respect to Section 5913 as rewritten by Act 16 of 1989 as well. Section 5913 describes a privilege and four circumstances when it is not applicable. The privilege explicitly referred to is the privilege not to testify against one's spouse. Section 5913 makes no reference whatsoever to the distinct privilege (rule of incompetency) with respect to confidential communications found in Section 5914.

To paraphrase the rules with regard to spousal testimony, a husband or wife is now deemed competent to testify against his or her spouse, but has a privilege to refuse to give adverse testimony, which he or she may waive. There is no privilege to refuse to testify against a spouse in four distinct situations: (1) actions for desertion and maintenance; (2) cases where the one spouse is charged with threatening,

attempting, or committing acts of bodily injury or violence against the other or against any child in their care; (3) cases of bigamy; or (4) cases where one of the charges is murder, rape, or involuntary deviate sexual intercourse. Even if a husband or wife may be called to give testimony adverse to his or her spouse, however, he or she is not competent to testify to confidential communications. Nevertheless, should the defense attack a spouse's character or conduct, the attacked spouse is a competent witness and may testify even to confidential communications.

In the present case, we are unable to determine from the record the full extent of the questions the Commonwealth sought to ask the Appellant and whether she could properly refuse to answer any of them on the basis of Section 5914. She initially refused to testify in response to the question, "Do you know a gentleman by the name of George Simon [the co-conspirator]?" In doing so, she explained, "I wish not to testify against my husband." N.T. 38. For the reasons stated above, there was no basis for invoking the privilege with regard to this question, which plainly did not relate to a confidential communication.

Following the hearing and the court's ruling on the claim of privilege, she refused to testify in response to questions as to her whereabouts on the date in question, whether she was present with her husband on that date, whether she was present when her husband and Simon returned to Simon's apartment, and whether she had a subsequent conversation with her husband concerning his involvement in the death. Thereafter the questioning was terminated in light of the Appellant's declared intention to continue to invoke the spousal privilege and not to answer any questions.

We can discern nothing about the first three questions that would implicate the prohibition against testimony about confidential communications. The record is inadequate to allow a determination whether the Appellant properly refused to answer the fourth question. This would depend on the circumstances of the conversation with her husband that was the subject of the query. If, for example, a third party was

present, the conversation would be deemed not confidential and Section 5914 would not bar the testimony.

For the foregoing reasons, we hold that the Appellant could not lawfully refuse to answer the questions addressed to her by the assistant district attorney by invoking the privilege not to testify against her husband. Accordingly, the Order of the Court of Common Pleas holding the Appellant in contempt is affirmed. Pursuant to that Order, upon the return of the record the Appellant shall be remanded to the Allegheny County Jail until such time as she testifies. Such testimony, of course, is subject to her right to refuse to testify to confidential communications pursuant to 42 Pa.C.S. § 5914, it being for the common pleas court to determine whether that rule is properly invoked with respect to any particular question.

LARSEN, and McDERMOTT, JJ., did not participate in the decision of this case.

PAPADAKOS, J., files a concurring and dissenting opinion.

PAPADAKOS, Justice, concurring and dissenting.

I concur with the majority's decision to continue the custody of Mrs. Newman until she testifies as to what she learned from her husband's confession to homicide. I dissent from the majority's holding that the Appellant could refuse to testify to a confidence because of 42 Pa.C.S. § 5914.

In *Commonwealth v. Hancharik*, (J–74–1992), 534 Pa. 435, 633 A.2d 1074 (1993) decided today as a companion case, I wrote separately to concur in the result because I cannot accept the statutory interpretation advanced by the majority regarding §§ 5913 and 5914.

Section 5913 reads:

Except as otherwise provided in this subchapter, in a criminal proceeding a person shall have the privilege, which he or she may waive, not to testify against his or her then lawful spouse except that there shall be no such privilege:

(1) in proceedings for desertion and maintenance;

(2) in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them;

(3) applicable to proof of the fact of marriage, in support of a criminal charge of bigamy alleged to have been committed by or with the other; or

(4) in any criminal proceeding in which one of the charges pending against the defendant includes murder, involuntary deviate sexual intercourse or rape.

This case is covered fully by subsection (4), as the trial court correctly decided.

For reasons which I detailed in *Hancharik,* I conclude that the four exceptions provided under § 5913 apply to § 5914. I am in dissent, therefore, as to the majority's determination that Mrs. Newman could refuse to testify to her husband's confidential admission because § 5914 would protect her silence from the exercise of judicial power. The trial court's order that she divulge the information was proper under the law. The majority is incorrect in determining that, upon a finding that the interspousal communication was confidential, she would be rendered speechless.

I agree that Appellant should remain in contempt until she is prepared to loosen her tongue in conformity with § 5913(4).