633 A.2d 1074

COMMONWEALTH of Pennsylvania, Appellee,

v.

Andrew W. HANCHARIK, Appellant.

Supreme Court of Pennsylvania.

Submitted March 10, 1992.

Decided Nov. 1, 1993.

436

Philip B. Friedman, Ambrose & Friedman, Erie, for appellant.

Jay Paul Kahle, Dist. Atty., Robert L. Saunders, Asst. Dist. Atty., Smethport, for appellee.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS, and CAPPY, JJ.

## *OPINION*

ZAPPALA, Justice.

Following trial by jury, the Appellant, Andrew W. Hancharik, was found guilty of involuntary deviate sexual intercourse, indecent assault, and corruption of a minor. He was sentenced to a six to fifteen year term of imprisonment. Superior Court affirmed the judgment of sentence, 388 Pa.Super. 337, 565 A.2d 782 (1989). The question in this appeal is whether certain testimony of the Appellant's wife was subject to the rule of 42 Pa.C.S. § 5914 governing confidential communications between spouses, and whether trial counsel rendered ineffective assistance by failing to object to its introduction.

The Commonwealth charged that the Appellant committed an act of indecent assault on a ten year old girl in November of 1985, and an act of involuntary deviate sexual intercourse on the same girl in December of 1985. The Appellant had worked with the girl's grandfather. The families had been acquainted for several years, and had spent time together over the preceding months. From about September of 1985, with her mother's permission, the girl regularly stayed at the Appellant's house on weekends, on holidays, and on other occasions.

At trial, the Commonwealth presented the testimony of Marsha Hancharik, the Appellant's wife. Among other things, Mrs. Hancharik testified to several matters that the Appellant claims should have been objected to by trial counsel and excluded:

a) that her husband wanted to adopt an older girl;

b) that her husband told her that "he loved [the girl] very much and needed a daughter to complete his family" and "he could relax when [she] was around;" and

c) that her sexual relationship with her husband was not good and that they were experiencing marital problems.

The Appellant relies on 42 Pa.C.S. § 5914, which states:

Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

The common pleas court ruled that the matters were not privileged, "and, even if they were, she was competent to testify about them under the exception provided for in the case of criminal proceedings brought against a spouse involving children in their care or custody. 42 Pa.C.S. § 5913." Opinion at 2. The majority opinion of the en banc Superior Court employed the same analysis of section 5913, concluding that it was "an express and complete exception to the spousal testimonial privilege on the facts of this case." 388 Pa.Super. at 346, 565 A.2d at 786.

At the time of trial, Section 5913 stated:

Except as otherwise provided in this subchapter, in a criminal proceeding husband and wife shall not be competent or permitted to testify against each other, except that in proceedings for desertion and maintenance, and in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them, each shall be a competent witness against the other, and except also that either of them shall be competent merely to prove the fact of marriage, in support of a criminal charge of bigamy alleged to have been committed by or with the other.[1]

1. This section was rewritten by Act 16 of 1989, effective June 29, 1989, and now reads:

Except as otherwise provided in this subchapter, in a criminal proceeding a person shall have the privilege, which he or she may

The Appellant argues that the "bodily injury or violence" exception to the rule that spouses were incompetent to testify against each other, found in this section, did not affect the rule stated in section 5914 that spouses are incompetent to testify about confidential communications. Superior Court rejected this contention. This was error.

Unquestionably, sections 5913 and 5914 involve two distinct rules.[2] The first was a rule disqualifying a husband or wife

waive, not to testify against his or her then lawful spouse except that there shall be no such privilege:

(1) in proceedings for desertion and maintenance;

(2) in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them;

(3) applicable to proof of the fact of marriage, in support of a criminal charge of bigamy alleged to have been committed by or with the other; or

(4) in any criminal proceeding in which one of the charges pending against the defendant includes murder, involuntary deviate sexual intercourse or rape.

Thus the statute was changed from a rule rendering one spouse incompetent to testify against the other to a rule recognizing a privilege not to testify against one's spouse, and an exception was added for cases where the charges include murder, rape or involuntary deviate sexual intercourse. See *Commonwealth v. Newman*, 534 Pa. 424, 633 A.2d 1069 (1993).

2. The distinction between the two is well set out in *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). There, the United States Supreme Court analyzed the roots of the common law privilege against adverse spousal testimony, tracing it from an absolute rule of spousal disqualification to a privilege that one spouse could assert to prevent adverse testimony by the other. Pennsylvania was identified as one of eight states retaining the rule of spousal incompetence, citation being made to 42 Pa.C.S. § 5913. The Court identified criticisms of the privilege in this form and the suggestions that it be replaced by "a privilege protecting only private marital communications, modeled on the privilege between priest and penitent, attorney and client, and physician and patient." 445 U.S. at 45, 100 S.Ct. at 909. In doing so, the Court noted that it had recognized a confidential marital communications privilege, but had not adopted the view "that the communications privilege be substituted *in place of* the privilege against adverse spousal testimony." *Id.*, at 45 n. 5, 100 S.Ct. at 909 n. 5. (Emphasis in original).

In deciding the issue in *Trammel*, whether to modify the privilege against adverse spousal testimony, the Court considered it "essential to remember that the *Hawkins* [privilege against adverse spousal testimo-

from giving any testimony adverse to the spouse. This broad rule was not without exceptions. Within Section 5913 was provided an exception for charges of threatening, attempting, or committing an act of bodily injury or violence on the spouse or children in their care, an exception for charges of desertion and maintenance, and an exception for charges of bigamy. The statement of the rule of incompetency was also preceded by language indicating that exceptions may be found elsewhere in the subchapter.

The second rule, found in section 5914, is more limited. It provides that spouses are incompetent to testify to confidential communications. The only exception stated within the section is that this protection may be "waived upon the trial." Again, however, there is prefatory language to the effect that the rule is as stated, "except as otherwise provided in this subchapter."

Superior Court construed this language to mean that the "bodily injury and violence" exception stated in section 5913 applied as an exception to the rule stated in section 5914. The

ny] is not needed to protect information privately disclosed between husband and wife in the confidence of the marital relationship.... Those confidences are privileged under the separate rule protecting confidential marital communications. The *Hawkins* rule is invoked, not to exclude private marital communications, but rather to exclude evidence of criminal acts and of communications made in the presence of third persons." *Id.* at 51, 100 S.Ct. at 912–13.

The Court ultimately concluded that the *Hawkins* rule "should be modified so that the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." *Id.* at 53, 100 S.Ct. at 914. This is the general rule of the current version of Section 5913 as it was rewritten in 1989, see footnote 1, *supra*. The exceptions stated therein, however, allow for the possibility that under Pennsylvania law a witness might be compelled to testify against his or her spouse. Compare *Commonwealth v. Hess*, 270 Pa.Super. 501, 411 A.2d 830 (1979), appeal dismissed, 499 Pa. 206, 452 A.2d 1011 (1982) (victim spouse may, in discretion of trial court, be compelled to testify against offending spouse in trial on assault and related charges of domestic violence), and *Commonwealth v. Hatfield*, 406 Pa.Super. 139, 593 A.2d 1275 (1991), affirmed, 530 Pa. 590, 610 A.2d 466 (1993) (per curiam) reargument granted 534 Pa. 255, 628 A.2d 840, Motion to Dismiss for Mootness granted October 5, 1993 (no abuse of discretion where trial court, based on representations that parties had undertaken marital counselling, quashed subpoena and did not compel victim-wife to testify in prosecution of husband for assault).

court failed to explain, however, how this interpretation could stand against the criticism that it renders section 5914 entirely superfluous. If a husband or wife is incompetent to testify against the spouse at all (section 5913), there is no need to state separately that a husband or wife is incompetent to testify to confidential communications (section 5914). Likewise, if the exception applies to both rules, then there is no circumstance where the confidential communications rule of section 5914 is applicable that the competency provision of section 5913 is not. If there is another reading of the statutes that avoids this difficulty and gives effect to all the provisions, it is to be preferred. See 1 Pa.C.S. § 1922(2) (presumption that legislature intends entire statute to be effective).

Such an interpretation is not difficult to discern. Subchapter A of Chapter 59 of the Judicial Code, in which these sections appear, contains another section dealing with spouses as witnesses in criminal proceedings, i.e., section 5915. That section provides that:

> In any criminal proceeding brought against the husband or wife, if the defendant makes defense at the trial upon any ground which attacks the character or conduct of his or her spouse, the spouse attacked shall be a competent witness in rebuttal for the Commonwealth.

If this section is read as the "except[ion] ... otherwise provided in [the] subchapter," all the language of each of the sections can be given effect. Thus, with respect to spouses as witnesses, the general rule is incompetency. This rule does not apply, that is, one spouse is a competent witness against the other, where it is charged that the other threatened, attempted, or committed an act of violence or personal injury to the spouse sought to be called as a witness or to children in the care of either of them. Even if the spouse is generally competent to testify under the "bodily injury or violence" exception, however, he or she is not competent to testify to confidential communications. The sole exception to this rule is that a husband or wife is competent to testify to rebut a defense based upon grounds that attack his or her character

or conduct. In such case, the testimony could encompass confidential communications.

■    Having determined that section 5914 was not rendered inapplicable by the fact that this case involved bodily injury or violence to a minor child in the defendant's care, to assess the claim of ineffective assistance we must determine whether Mrs. Hancharik testified to confidential communications, and if so, whether counsel could have had a reasonable basis for not objecting, thus "waiving the privilege upon the trial."

Of the statements identified by present counsel as being objectionable, it is clear that the first does not qualify as a confidential communication. The record is replete with indications that the Appellant told many people other than his wife that he wished to adopt an "older" girl. The Hanchariks had even contacted a county agency, applied to be foster parents, and gone through foster care home study towards this end. Undoubtedly, in the course of this process, the Appellant expressed his desire to adopt an older girl in the presence of, indeed directly to, a party other than his wife. Even if there was an instance when the Appellant indicated his desire to adopt an older girl to his wife in a confidential marital communication, his wife clearly could testify regarding any of the other instances where he gave the same indication in a non-confidential setting.

■    The second category of testimony complained of just as clearly does come within the scope of section 5914 as confidential communications. Communications between husbands and wives are presumed to be confidential, and the party opposing application of the rule disqualifying such testimony bears the burden of overcoming this presumption. See *Blau v. United States,* 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951); *Wolfle v. United States,* 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617 (1934). We find nothing to overcome this presumption with respect to the Appellant's statements to his wife that he loved the girl and that he was able to relax in her presence.

■    Whether the third category of testimony, Mrs. Hancharik's observations that she and her husband had marital

problems and a poor sexual relationship, comes within the scope of section 5914 is a more difficult question.[3] It is,

3. Under the common law, it was generally stated that if the general rule of incompetency did not apply (for example, if the parties were no longer married), a witness was permitted to testify "as to *any matter not obtained* through confidential communication or *in consequence of the domestic relation." Adams v. Bleakley,* 117 Pa. 283, 285, 10 A. 884 (1887) (emphasis added). We have not had occasion to actually decide, however, whether the *statutory* rule, phrased solely in terms of "confidential communications," encompasses more than verbal exchanges. Compare *Commonwealth v. Maguigan,* 511 Pa. 112, 124, 511 A.2d 1327, 1333 (1986) ("codification of attorney-client privilege [42 Pa.C.S. § 5916] is merely a restatement of the common law privilege *and its attendant case law interpretations"* [emphasis added] ).

In *Commonwealth v. Wilkes,* 414 Pa. 246, 251, 199 A.2d 411, 413 (1964), we stated

[c]onfidential communications between [husband and wife] *and facts which have come to their knowledge through the marital relationship* cannot be divulged by either without the consent of the other. However, if knowledge thereof is not gained through the relationship and in the confidence which that relationship inspires, it is not privileged: *Seitz v. Seitz,* 170 Pa. 71, 32 A. 578 (1895). (Emphasis added.)

In that case, however, the defendant sought to exclude certain letters he had written to someone else, which his estranged wife had found then given to another person who had given them to the police, on the grounds that to allow their admission would, in effect, be to allow his wife to testify or give evidence against him, contrary to the Act of May 23, 1887, P.L. 158, § 2(b), as amended, 19 P.S. § 683, the predecessor to 42 Pa.C.S. § 5913. Thus our comment about the confidential communications privilege was dictum.

The case cited, *Seitz v. Seitz,* was a divorce action on grounds of adultery in which the wife's testimony as to conduct of her husband that she had witnessed and statements he had made to her had been excluded at trial. This Court first determined that under section 5(c) the Act of May 23, 1887, predecessor of 42 Pa.C.S. § 5924(b)(1) [husband or wife competent to testify against spouse in divorce proceedings], the wife was "clearly competent to testify to anything she had seen," 170 Pa. at 74, 32 A. at 578. The Court then addressed the question whether the statements made by the husband were properly excluded on the ground that they were confidential communications, stating

[w]hether a communication is to be considered as confidential depends upon its character as well as upon the relation of the parties. It is essential that it should be made in confidence and with the intention that it should not be divulged. The privilege is based upon considerations of public policy, as in the case of husband and wife to preserve the peace, harmony and confidence in their relations, and in the case of attorneys and client to secure the unreserved communication which the ends of justice require. If not made because of the relation of the parties and in the confidence which that relation

however, a question we need not resolve in order to decide this appeal, for even if it is assumed that the testimony is covered by section 5914, counsel could have foregone any objection pursuant to a reasonable trial strategy. As described concisely by Judge Brosky in his Concurring Opinion below,

[p]art of appellant's theory of defense was that the charges had resulted from his wife's jealousy of his relationship with [the girl], and from her bitterness in connection with their impending divorce. Hence, it is possible that trial counsel had merely wished to discredit the charges by permitting the challenged testimony, and then by introducing appellant's own testimony pertaining to these statements, in which appellant spoke at length about his wife's irrational

inspires and which it is the policy of the law to hold inviolate, it is not privileged. Ordinarily it might be inferred that communications made by a husband to his wife were made with the intent and in the confidence mentioned, but the circumstances and the nature of the statement repel such a presumption in this case. . . .
*Id.* at 74–75, 32 A. at 578.

In *Commonwealth v. Clark*, 347 Pa.Super. 128, 500 A.2d 440 (1985), appeal dismissed as improvidently granted, 516 Pa. 16, 531 A.2d 1108 (1987), Superior Court held that it was improper to allow the defendant's wife to testify to (a) statements he made to her before and after he robbed a gas station, killing the attendant, and (b) her observations of him washing a gun and disposing of it. The court stated that the purpose of the privilege is the preservation of marital harmony and the resultant benefits to society from that harmony. Based on this, the court held that the wife could not testify to statements made by her husband even though the husband had later repeated the statements to a third party. "Despite what a speaker spouse chooses to utter at a later time, his original confidence remains intact not merely for his benefit, but for the good of marriage as an institution." 347 Pa.Super. at 133, 500 A.2d at 443. Although the third parties might be called to testify to what the defendant told them, the wife was not permitted to testify to identical statements made to her. Focusing on the same purpose, the court also held that "it would be anomalous to exclude acts done at the time the confidential oral communications were made from the protection of the privilege. The marital relationship gave rise to both the statements and the actions surrounding the gun." *Id.* at 134, 500 A.2d at 444. We express no opinion as to the correctness of this decision.

jealousy and mischaracterization of what was, in appellant's eyes, a normal father-daughter relationship.

388 Pa.Super. at 356, 565 A.2d at 791–92.

The Appellant argues that despite his assertion in post-trial motions that counsel had been ineffective, "trial counsel did not attempt to justify his failure to object. Rather, the Commonwealth relied upon its assertion that the issue had no underlying merit." Brief for Appellant at 20. He also characterizes the foregoing as a "hypothetical strategy . . . unsupported by the record." Brief of Appellant at 21.

Trial counsel, however, is presumed to have acted effectively and in his client's best interests, and it is the defendant who bears the burden of demonstrating ineffectiveness. *Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233, 235 (1981). A corollary of this precept is that counsel's stewardship may be deemed effective if any reasonable basis for his or her actions is apparent from the record, and counsel's actual reasoning need not be established at an evidentiary hearing. *Commonwealth v. Marsh*, 460 Pa. 253, 258, 333 A.2d 181, 183 (1975).

If the Appellant wished to demonstrate, as he now argues, that counsel did not object because he erroneously believed the statements were admissible and not because he was pursuing a certain trial strategy, it was incumbent upon him to elicit such testimony from trial counsel at the hearing on post-trial motions. Instead of developing the record as to trial counsel's strategy or lack thereof on this point, however, present counsel "waive[d] any argument other than what's in the memorandum" filed in support of the post-verdict motions, thus leaving the record of the trial as the only evidence regarding his claim.

Moreover, contrary to the Appellant's view, the record gives indication that this was, in fact, trial counsel's strategy. It appears that counsel fully intended to use Mrs. Hancharik's testimony about the status of their marital relationship to buttress the theory suggested by the Appellant that his wife was behind the filing of these false charges against him because "something is really wrong with our marriage, our

divorce is mixed up into this." Notes of Testimony at 135, R. 49a. Although counsel apparently planned to introduce this line of testimony by way of cross-examination "for purposes of impeaching her credibility," N.T. at 52, and thus objected on the grounds of relevance to its admission in the Commonwealth's case in chief, N.T. at 51, for present purposes it is sufficient to note that from the outset,[4] in one form or another, counsel intended that the jury hear this line of testimony.

Nor do we agree that such a strategy is "inherently unacceptable." The Appellant argues that trial counsel could have pursued the same end, i.e., portraying Mrs. Hancharik as an irrational, jealous wife and suggesting that the charges were fabrications designed to secure her some advantage in the divorce proceedings, without permitting inadmissible testimony. Even if counsel could have pursued this strategy without allowing the jury to hear Mrs. Hancharik,[5] the test is not whether more reasonable trial strategies were available, but whether trial counsel could have had some reasonable basis for the strategy that was chosen. Perhaps counsel believed that Mrs. Hancharik's demeanor would buttress his theory. Perhaps counsel thought his theory would be more credible if evidence from which jealousy could be inferred came from Mrs. Hancharik herself rather than solely from the Appellant, who had obvious reasons for fabricating such a scenario. Clearly, there are many reasons why counsel might reasonably have chosen not to object to the testimony now challenged, and thus there is no basis for determining that he rendered ineffective assistance.

The Order of the Superior Court is affirmed.

LARSEN, J., did not participate in the decision of this case.

4. The opening statements of counsel were not transcribed, but it is apparent from the side bar discussion about the relevancy objection that defense counsel, in his remarks, had indicated his intention to present evidence concerning the divorce, N.T. at 51–52.

5. Had counsel undertaken to present this theory solely by way of the Appellant's testimony, Mrs. Hancharik would arguably have been competent to testify on rebuttal even as to confidential communications pursuant to 42 Pa.C.S. § 5915.

MONTEMURO, J., did not participate in the consideration or decision of this case.

PAPADAKOS, J., files a concurring opinion.

(T.T. at pp. 28–29)

PAPADAKOS, Justice, concurring.

Despite my sympathy with those of us who must interpret these statutes, I differ from the reasoning of the majority opinion while I concur in the result.

My first objection rests on factual grounds: I found no evidence in the transcript of the trial to demonstrate that the statement by the wife admitted there was made in confidence. The statement at issue is that Andrew Hancharik told his wife:

He just claimed that he loved her very much and he needed a daughter to complete his family. I told him if that was the case he had to consider the grandmother's feeling cause she'd spent a lot of time with her grandmother throughout the years. She just couldn't be shut off from her life. I said I'm not her mother. You will have to go talk to her mother and he did. He told her of his need for a daughter and how much he really loved Kathy and Kathy enjoyed being with us as far as I knew.

* * * * * *

Q. You indicated he was spending more time with her than you and your son. Did things seem to be progressing the way you believed that they should?

A. No. He always expressed a need to me to need this relaxation. He said when his family was complete then he could relax when Kathy was around. To me he wasn't relaxing. Only way he could relax was if Kathy and him go for a drive or left alone. My son and I were kind of just there to complete the family.

(T.T. at pp. 28–29).

The trial court (Maj. opinion at p. 442) concluded that the statement was not privileged. The Superior Court en banc

disagreed by determining that the statements were confidential.

As posed by the majority of our Court, the statement-issue reads (Maj. opinion at p. 437): "that 'he loved [the girl] very much and needed a daughter to complete his family' and 'he could relax when [she] was around.'" Without explanation, the majority then concludes that the "testimony complained of just as clearly does come within the scope of section 5914 as confidential communications."

It is not clear at all. A close reading of the transcript as quoted above shows that Appellant's confession of love *also* was made to the victim's mother, according to the uncontested testimony of his wife as to that fact. The record, therefore, speaks for itself as either a public statement or a waiver of any intent to maintain confidentiality. In either case, I conclude that the language cannot be designated as a confidence. I fear that the majority has decided that the Appellant's sexual act upon the girl defines his profession of "love" as a presumption of romantic love. The evidence, therefore, is being read backwards from his deviate conduct to his feelings of "love."

The general context of the relevant testimony, moreover, offers no support for the majority's conclusions. Appellant told at least two people that he loved the girl, but likewise repeated his feelings that an adopted daughter would satisfy his vision of a "complete" family along with his son and that he could "relax" with her as a family member. As the majority recognizes, he told at least several other people that he wanted to adopt an "older" girl. Nothing about this broader testimony manifests any sense of confidentiality.

Because I cannot agree that a predicate of spousal confidentiality existed by virtue of this statement, I find that defense counsel was not ineffective for failing to object to the testimony. I am convinced that the majority opinion has been misled by an acutely strained reading of the testimony in order to establish a confidential communication between the Hanchariks.

I likewise disagree sharply with the contention that the statutory scheme embodied in sections 5913, 5914 and 5915 of 42 Pa.C.S. would foreclose revelation of a spousal confidence under these circumstances. The Superior Court decided the issue correctly, and even assuming arguendo that a confidential communication was present, I would agree that where an exception is provided in criminal cases involving an act against a child, the defendant's spouse would be competent to testify. As pointed out by Judge Tamilia's concurring opinion, the evolution of legal doctrine on this subject from the common law to modern statutes indicates an undeniable trend to protect children who have been abused.

In a more technical sense, by enacting amendments to § 5913, the legislature, I am convinced, meant to destroy the spousal privilege where a child in the home suffers violence. Contrary to the majority's reading, I interpret § 5914's prefatory pronouncement, "Except as otherwise provided in this subchapter," to refer to § 5913 and § 5915 and underscore the fact that the identical language appears in the former as well. Sections 5913 and 5914, therefore, are meant to read that a spousal confidentiality exists, except where certain conduct specifically destroys the privilege, as in this case. Section 5914 must be read in terms of the exceptions provided by § 5913. When two statutes conflict, the more specific one closely applicable to the controversy controls over a more generalized provision. The narrower and earlier statute should decide the meaning of the subsequent statute, § 5914 in this case. A common sense construction of this language makes it plain that spousal incompetency is limited by the stated exceptions. Finally, a court is not permitted to alter or ignore the unmistakable language of a statute. *Commonwealth v. Scott*, 516 Pa. 346, 357, 532 A.2d 426, 429 (1987) (construing § 5913). While cognizant of bad draftsmanship, I am convinced firmly that Mrs. Hancharik's testimony was permissible.