J-S44024-15

2016 PA Super 8

| | |
|---|---|
| CAP GLASS, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| TAMMY L. COFFMAN A/K/A TAMMY KEEFER; ROBERT COFFMAN; LISA CAVANAUGH AND JOHN CAVANAUGH | |
| APPEAL OF: LISA CAVANAUGH | No. 2039 WDA 2014 |

Appeal from the Order Dated November 14, 2014
In the Court of Common Pleas of Fayette County
Civil Division at No: 1388 of 2014 GD

BEFORE:  LAZARUS, STABILE, and JENKINS, JJ.

OPINION BY STABILE, J.:                    **FILED JANUARY 13, 2016**

Appellant, Lisa Cavanaugh, appeals from the November 14, 2014 order compelling the testimony of her husband, John Cavanaugh ("Mr. Cavanaugh" and collectively with Appellant, the "Cavanaughs").  Appellant argues the trial court erred in compelling her husband to disclose confidential marital communications because 42 Pa.C.S.A. § 5923 forbids such testimony.  The trial court ruled that Appellant cannot avail herself of the protections of § 5923 to perpetrate a fraud.  After careful review, we affirm in part, reverse in part, and remand.

Appellee, CAP Glass, Inc., commenced this action on July 15, 2014 alleging among other things, a cause of action for conversion against John and Lisa Cavanaugh as well as Tammy and Robert Coffman (the

"Coffmans"). The complaint alleges that Lisa Cavanaugh, in her role as Appellee's in-house accountant, issued 276 fraudulent checks totaling more than $1.5 million drawn on Appellee's bank accounts. The complaint alleges Lisa Cavanaugh issued these checks to the Coffmans, who in turn issued cash kickbacks to the Cavanaughs.

Mr. Cavanaugh appeared for a deposition on October 29, 2014, during which counsel for Mr. Cavanaugh and counsel for Appellant objected to several questions whose answers could have revealed confidential marital communications. On November 12, 2014, Appellee filed a motion to compel Mr. Cavanaugh's testimony. The trial court granted the motion two days later and Appellant filed this timely interlocutory appeal. She raises two issues for our review:

1. Whether the trial court committed an error of law or abused its discretion by ordering John Cavanaugh to testify concerning the spousal communications of his wife, Appellant Lisa Cavanaugh, by finding a fraud exception to the confidential spousal communication privilege.

2. Whether the trial court committed an error of law or abused its discretion by ordering John Cavanaugh to testify concerning the spousal communications of his wife, Appellant Lisa Cavanaugh, where the confidential communications for which she claimed the privilege were not made pursuant to a joint scheme of fraudulent misappropriation.

Appellant's Brief at 2.

First, we must address Appellee's argument that we lack jurisdiction over this appeal because the trial court's order is not a collateral order.

- 2 -

Appellant filed this appeal from a collateral order pursuant to Pa.R.A.P. 313.

That rule provides:

> **(a)  General rule.**  An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
>
> **(b)  Definition.**  A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.  "The 'collateral order doctrine' is construed narrowly, and each prong of the aforementioned test must be met before an order may be considered appealable under the doctrine."  *Castellani v. Scranton Times, L.P.*, 916 A.2d 648, 652 (Pa. Super. 2007), *aff'd*, 956 A.2d 937 (Pa. 2008).

Appellee argues the trial court's order is not separable from and collateral to the main cause of action because our review of the issues on appeal will be inextricably intertwined with the merits of Appellee's causes of action.  Appellee relies on this Court's opinion in *Fidelity Nat. Title Ins. Co. of New York v. United Settlement Servs., Inc.*, 924 A.2d 1270 (Pa. Super. 2007).  There, the trial court issued a discovery order compelling the wife to answer questions she believed implicated the spousal privilege codified at 42 Pa.C.S.A. § 5924.

We cannot address Appellee's argument in support of quashal without an overview of §§ 5923 and 5924.  Section 5924, at issue in *Fidelity*, provides as follows:

**§ 5924.  Spouses as witnesses against each other**

**(a)  General Rule.--** In a civil matter neither husband nor wife shall be competent or permitted to testify against each other.

**(b)  Exception.**—Subsection (a) shall not apply in an action or proceeding:

> 1) For divorce, including ancillary proceedings for the partition or division of property.
>
> (2) For support or relating to the protection or recovery of marital or separate property.
>
> (3) For custody or care of children, including actions or proceedings relating to visitation rights and similar matters.
>
> (4) Arising under 23 Pa.C.S. Ch. 61 (relating to protection from abuse).
>
> (5) When a statute heretofore or hereafter enacted applicable to the action or proceeding provides either expressly or by necessary implication that spouses may testify therein against each other.

42 Pa.C.S.A. § 5924.

Thus, § 5924 renders spouses incompetent to testify as witnesses against each other except as specified in § 5924(b).  Section 5924 applies while the spouses are living and remain legally married.  *Hunter v. Hunter*, 83 A.2d 401, 403 (Pa. Super. 1951), *Huffman v. Simmons*, 200 A 274, 276 (Pa. Super. 1938); *see also Commonwealth v. Clark*, 500 A.2d 440, 442 n.1 (Pa. Super. 1985), *appeal dismissed*, 531 A.2d 1108 (Pa. 1987)

(discussing the criminal law analogue of § 5924).[1]  It therefore serves the purpose of preserving marital harmony.  *Hunter*, 83 A.2d at 403.  In addition, our courts have created a fraud exception whereby spouses cannot rely on § 5924 where its application would assist them in committing a fraud.  *Kerr v. Clements*, 25 A.2d 737 (Pa. Super. 1942).[2]

Section 5923, at issue in this appeal, protects confidential marital communications:

### § 5923.  Confidential communications between spouses

Except as otherwise provided in this subchapter, in a civil matter neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

42 Pa.C.S.A. § 5923.  Like § 5924, this section serves to protect and promote marital harmony.  *Hunter*, 83 A.2d at 403.  Unlike § 5924, however, the privilege protecting confidential marital communications remains in effect after divorce or the death of one spouse.  *Hunter*, 83 A.2d at 403 (citing *Brock v. Brock*, 109 A. 486 (Pa. 1887)).

Our Commonwealth Court has addressed the distinction between §§ 5923 and 5924 as follows:

_____

[1]  Sections 5923 and 5924 have identical analogues at 42 Pa.C.S.A. §§ 5913 and 5914.  The latter two sections apply in criminal trials.

[2]  *Kerr* was decided under 28 P.S. § 317, the predecessor of current § 5924.  Similarly, 28 P.S. § 316 is the predecessor of current § 5923.  *See Commonwealth ex. rel. Platt v. Platt*, 404 A.2d 410, 413 (Pa. Super. 1979) (describing former §§ 316 and 317).

It must first be noted that the spousal incompetence provision of section 5924 and the spousal confidential communication privilege of section 5923 are quite separate and distinct. The former provision disqualifies a husband or wife to give any testimony adverse to the spouse subject to the exceptions in 5924(b); the latter is much more limited and relates to the competence of a spouse to testify regarding confidential communications.

*B.K. v. Dep't of Pub. Welfare*, 36 A.3d 649, 656 (Pa. Cmwlth. 2012). "To be protected as a confidential communication, the information must be gained through the marital relationship and in the confidence that the relationship inspires." *Id.* (citing *Commonwealth v. Dubin*, 581 A.2d 944, 496 (Pa. Super. 1990), *appeal denied*, 588 A.2d 912 (Pa. 1991)). "Communications between spouses are presumed to be confidential and the party opposing the privilege bears the burden of overcoming this presumption." *Id.* (citing *Commonwealth v. Hancharik*, 633 A.2d 1074, 1078 (Pa. 1993)).

"Whether a communication is to be considered as confidential depends upon its character as well as upon the relation of the parties." *Seitz v. Seitz*, 32 A. 578 (Pa. 1895). "It is essential that it should be made in confidence, and with the intention that it should not be divulged." *Id.* at 578. "If not made because of the relation of the parties, and in the confidence which that relation inspires, and which it is the policy of the law to hold inviolate, it is not privileged." *Id.*

Appellee argues quashal is appropriate because instantly, as in *Fidelity*, this Court cannot assess Appellant's assertion of privilege without

also assessing the merits of Appellee's fraud claims. In other words, Appellee argues this appeal is improper under Rule 313 because the issue before us is not separable from and collateral to the underlying causes of action.

In **Fidelity**, the wife argued that the spousal privilege of § 5924 applied after the date on which her husband's fraud purportedly ceased. **Fidelity**, 924 A.2d at 1271. The husband admitted that he engaged in a fraudulent scheme, but he also claimed the fraud ceased as of November 8, 2004. **Id.** Thus, the wife believed § 5294 rendered her incompetent to testify to anything that occurred after that date. The plaintiff asserted the fraudulent conduct and efforts to conceal it continued after November 8, 2004. **Id.** at 1272. The trial court found the privilege inapplicable in part because it "does not encompass private communications made in furtherance of fraud." **Id.** at 1271 (citing **Kine v. Foreman**, 209 A.2d 1 (Pa. Super. 1965)).

This Court quashed the appeal from the order compelling the wife's testimony, reasoning that we could not address the asserted privilege without also addressing the merits of the plaintiff's fraud causes of action. **Id.** at 1272. The wife's assertion of privilege was dependent upon her assertion that her husband's fraud ceased as of a date certain. The plaintiff disputed whether the fraud ceased as of that date. Thus, to address the wife's assertion of privilege, this Court necessarily had to discern whether

fraudulent conduct occurred after November 8, 2014. We quashed the appeal because the asserted privilege was inextricably intertwined with the merits of the plaintiff's causes of action. ***Id.***

In this case, as in ***Fidelity***, the trial court found the asserted privilege inapplicable because the spouses are accused of fraudulent conduct. Appellant's assertion of privilege is, however, distinct from the one at issue in ***Fidelity***. Here, Appellant asserts that Appellee's counsel posed questions that called for disclosure of confidential communications protected under § 5923. Appellant did not assert Mr. Cavanaugh's incompetence as a witness pursuant to § 5924, as did the wife in ***Fidelity***.

This appeal requires only an assessment of the applicability of § 5923 and not an assessment of the merits of Appellee's claims. Appellant has not presented the issue in a way that forces this Court to determine whether the alleged fraudulent conduct actually occurred. The issue on appeal, put simply, is whether Appellant can rely on § 5923 to prevent her husband from divulging confidential marital communications in a conversion action pending against both of them. Section 5923 applies if the communications at issue were "gained through the marital relationship and in the confidence that the relationship inspires." ***B.K.***, 36 A.3d at 656. Also, we must address Appellant's argument that the so-called fraud exception applies to § 5924 but not § 5923. These issues are not intertwined with the merits of Appellee's causes of action.

Next, we consider the remaining two prongs of Rule 313—whether the asserted right is too important to be denied review and whether it will be irreparably lost if we deny immediate review. Our Supreme Court has held that discovery orders requiring disclosure of allegedly privileged materials are appealable under Rule 313 where, as here, the issue of privilege is separable from the underlying issue. *Ben v. Schwartz*, 729 A.2d 547, 551-53 (Pa. 1999); *see also, Castellani v. Scranton Times, L.P.*, 956 A.2d 937, 942 n.5 (Pa. 2008). Thus, assertions of privilege whose merits are sufficiently separable from the underlying issue commonly meet the remaining two prongs of Rule 313. We conclude that Appellant's assertion of privilege does so in this case. An issue is sufficiently important for immediate review under Rule 313(b) if it involves rights "deeply rooted in public policy going beyond the particular litigation at hand." *Id.* at 552 (quoting *Geniviva v. Frisk*, 725 A.2d 1209, 1214 (Pa. 1999)). A statutory privilege protecting confidential marital communications, with its underlying goal of protecting and promoting marital harmony, obviously qualifies. In addition, a disclosure of confidential marital communications cannot be undone, and therefore the asserted right will be irreparably lost if we defer appellate review. Based on the foregoing, Appellant's collateral appeal is proper under Rule 313.

We now turn to the merits. Appellant relies on § 5923 to preclude Mr. Cavanaugh from divulging confidential marital communications. She does

not assert Mr. Cavanaugh's incompetence as a witness under § 5924. The trial court relied on the fraud exception to spousal privilege in ordering Mr. Cavanaugh to answer Appellee's questions. Appellant notes, correctly, that Pennsylvania jurisprudence has applied the fraud exception exclusively to cases involving § 5924 and its predecessor, 28 P.S. § 317. She argues the fraud exception does not apply to § 5923.

The trial court relied on **Kerr** to find the fraud exception applied here. In **Kerr**, the plaintiff in an ejectment action alleged the defendants obtained their purported interest in land by a fraudulent conveyance. **Kerr**, 25 A.2d at 738. The defendants—husband and wife—argued the trial court erred in compelling them to testify against one another. **Id.** at 739. This Court disagreed, noting that the spouses did not actually testify against one another—they held a joint interest in the subject property and through their testimony they supported each other in hope of maintaining that interest. **Id.** at 740. In addition, the **Kerr** Court wrote:

> The prohibition against the competency of husband and wife to testify against each other operates only within proper bounds. It was not intended in the act to supply the means of protecting another in a fraudulent transaction nor to render husband and wife secure in the enjoyment of the fruits of fraud.

**Id.** Thus, the **Kerr** Court expressly addressed the competency of spouses as witnesses against each other. The Court did not address confidential communications.

In *Kine*, the plaintiff judgment creditor alleged that the debtor husband was transferring assets to his wife—and thereby out of the reach of the judgment creditor—through the spouses' joint interest in a wallpaper company. Plaintiff asked husband, during husband's deposition, a series of questions about his and his wife's respective roles in the wallpaper company. *Kine*, 209 A.2d at 2. The *Kine* Court cited *Kerr* for the proposition that the predecessor of § 5924 did not apply to assist spouses in perpetuating a fraud. *Id.* at 3. This Court concluded the trial court did not err in sanctioning the husband for refusing to answer.

Thus, *Kerr* and *Kine* applied a court-created fraud exception to former 28 P.S. § 371. Our Courts, as evidenced in *Fidelity*, continue to apply the fraud exception to § 5924 in addition to the statutory exceptions set forth in § 5924(b). We now must decide whether the court-created exception applies to § 5923. A careful review of the pertinent case law convinces us it does not.

In *Kine*, the husband refused to answer these questions at his deposition:

> a) Were you employed immediately prior to the formation of Crown Wallpaper Company? (b) Did your wife become President of Crown Wallpaper Company at the time of its formation? (c) Did your wife perform any services for Crown Wallpaper Company in 1948? (d) Who paid for the automobile held by your wife but owned by Crown Wallpaper Company? (e) Did Crown Wallpaper Company advance the funds to pay for the automobile? (f) Did your wife pay for the automobile with her money? (g) Who are the present stockholders of Crown Wallpaper Company and who were the stockholders at the time

of its formation? (h) Is your wife a stockholder of Crown Wallpaper Company? (i) Is your wife employed at the present time? (j) Who supports your wife? (k) Does your wife own any real estate?

*Kine*, 209 A.2d at 2. Importantly, none of these questions explicitly asked the husband to divulge the substance of a private marital communication. Despite this, the *Kine* Court wrote as follows: "The public policy which protects as confidential the **private communications** or acts by the husband and wife does not necessarily extend to those communications or acts which are in furtherance of a fraud, where the proceedings are based upon a civil action." *Id.* at 3 (emphasis added).

The *Kine* Court's use of the phrase "private communications" has become the source of some confusion. At least one federal court has relied on *Kine* to hold that the fraud exception vitiates the privilege of § 5923. *Brown v. Scafidi*, 839 F. Supp. 342, 345 (E.D. Pa. 1993). Likewise, this Court in *Commonwealth v. Savage*, 695 A.2d 820 (Pa. Super. 1997), noted that the *Kine* Court "**suggested** that communications in furtherance of a fraud would not be privileged in a civil action." *Id.* at 824 (emphasis added). [3]

_____

[3] The *Savage* Court held that the fraud exception to § 5924 does not apply in the criminal context. *Id.* at 823-24. The *Savage* Court held that any such development must come from the legislature. *Id.* at 824. This Court recently reaffirmed that holding in *Commonwealth v. Davis*, 121 A.3d 551 (Pa. Super. 2015) (*en banc*).

Appellee relies on the *Kine* Court's use of the phrase "private communications" to support its argument that the fraud exception applies to § 5923. Two observations about the *Kine* opinion lead us to conclude it is not dispositive of the question before us. First, the confidential marital communications privilege was not at issue in *Kine*. The *Kine* Court addressed spousal competence as a witness under 28 P.S. § 317, the predecessor of current § 5924. *Kine*, 209 A.2d at 3. Second, as we have explained, the questions at issue in *Kine*, quoted above, did not seek disclosure of confidential spousal communications. Thus, the *Kine* Court's statement about confidential private communications was *dicta* insofar as it relates to § 5923.

Lacking direct authority on the civil versions of the spousal testimony and confidential communications privileges, we turn for guidance to our Supreme Court's analysis of the criminal analogues found at 42 Pa.C.S.A. §§ 5913 and 5914.[4] In *Commonwealth v. Newman*, 633 A.2d 1069 (Pa.

_____

[4] Section 5913, the criminal analogue of § 5924, provides as follows:

Except as otherwise provided in this subchapter, in a criminal proceeding a person shall have the privilege, which he or she may waive, not to testify against his or her then lawful spouse except that there shall be no such privilege:

(1) in proceedings for desertion and maintenance;

(2) in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon

*(Footnote Continued Next Page)*

- 13 -

1993), the Supreme Court addressed whether a wife could refuse to divulge confidential marital communications under § 5914 even though she did not have the privilege to refuse to testify under § 5913. The Court held that the wife could not divulge confidential marital communications even though an exception to Rule § 5913 vitiated her privilege not to testify against her husband.[5]  *Id.* at 1072.  "**Even if a husband or wife may be called to give testimony adverse to his or her spouse, however, he or she is**

*(Footnote Continued)* ————————————

the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them;

(3) applicable to proof of the fact of marriage, in support of a criminal charge of bigamy alleged to have been committed by or with the other; or

(4) in any criminal proceeding in which one of the charges pending against the defendant includes murder, involuntary deviate sexual intercourse or rape.

42 Pa.C.S.A. § 5913.

Section 5914, the criminal law analogue of § 5923, provides as follows:

Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

42 Pa.C.S.A. § 5914.

[5]  Section 5913, unlike its civil analogue at § 5924, is not a rule of witness competency.  Rather, it creates a privilege whereby one can refuse to testify against one's spouse in a criminal proceeding.  *See Savage*, 695 A.2d at 823.

**not competent to testify to confidential communications.**" ***Id.*** (emphasis added).

In ***Commonwealth v. Hancharik***, 633 A.2d 1074, 1075 (Pa. 1993), a companion case decided the same day as ***Newman***, the appellant argued counsel was ineffective for failing to object to the introduction of confidential marital communications where his wife was competent to testify under § 5913. As in ***Newman***, the trial court believed the confidential communications were admissible under § 5914 because the wife was competent as a witness pursuant to an exception to § 5913. ***Id.*** at 1075. The ***Hancharik*** Court ruled that the exceptions of § 5913 were not applicable to § 5914. ***Id.*** at 1077. That outcome, the Court reasoned, would render § 5914 "entirely superfluous." ***Id.***

> If a husband or wife is incompetent to testify against the spouse at all (section 5913), there is no need to state separately that a husband or wife is incompetent to testify to confidential communications (section 5914). Likewise, if the exception applies to both rules, then there is no circumstance where the confidential communications rule of section 5914 is applicable that the competency provision of section 5913 is not.

***Id.*** The opening clause of § 5914—"Except as otherwise provided in this chapter"—therefore did not refer to the § 5913 exceptions. Rather, the opening clause of § 5914 refers to § 5915 (the civil analogue appears at § 5925) whereby a husband or wife can divulge confidential communications in rebuttal if the spouse attacks his or her character. ***Id.***; ***see also Newman***, 633 A.2d at 1072.

- 15 -

We believe the analysis in *Hancharik* and *Newman* is highly instructive in this case. The language of §§ 5914 and 5923 is identical, except that the former applies "in a criminal proceeding" and the latter applies "in a civil matter." 42 Pa.C.S.A. §§ 5914, 5923. The underlying policy of both sections—to protect and promote marital harmony—also is identical. Ultimately, we believe the teachings of *Newman* and *Hancharik* provide persuasive reasons to limit the applicability of the fraud exception to § 5924. Specifically, *Newman* and *Hancharik* teach that our General Assembly has deemed confidential marital communications worthy of special protection, even in cases where spouses are competent to testify against each other. In the criminal context, this Court has held that a husband's confession to his wife of his commission of a crime is inadmissible under § 5914 even though his wife was competent to testify because the couple was divorced by the time of trial. *Clark*, 500 A.2d at 443. The *Clark* Court wrote:

> The privilege that protects information privately disclosed between husband and wife in the confidence of the marital relationship was once described by the United States Supreme Court as 'the best solace of human existence.' *Stein v. Bowman,* 13 Pet. 209, at 223, 10 L.Ed. 129 (1839) in *Trammel v. U.S., supra,* 446 U.S. at 51, 100 S.Ct. at 913.

*Id.* at 442. This principle holds true in both criminal and civil cases.

In summary, Pennsylvania law allows for disclosure of confidential spousal communications in very limited circumstances, such when the privilege is waived, per § 5923, or when a witness must do so to defend

himself or herself from a spouse's attack on his or her character, per § 5925. In light of the strong public policy favoring the protection of confidential marital communications, even where spouses are otherwise competent to testify against one another, we believe that additional restrictions on the spousal communications privilege of § 5923, if any, must come from the General Assembly or from our Supreme Court.

We now review Mr. Cavanaugh's deposition transcript and the specific objections at issue on appeal. On five occasions during Mr. Cavanaugh's deposition, counsel for Appellant and Mr. Cavanaugh objected to a line of questioning and directed Mr. Cavanaugh not to answer. In the first of these, Appellee's counsel questioned Mr. Cavanaugh about a phone call from his wife, the Appellant:

> [Appellee's Counsel]: Okay. And what did she communicate to you over the phone that evening?
>
> [Appellant's Counsel]: Objection, spousal privilege.
>
> [Mr. Cavanaugh's Counsel]: I would instruct my client not to answer.
>
> [Appellee's Counsel]: In a deposition?
>
> [Appellant's Counsel]: Absolutely.
>
> [Appellee's Counsel]: Okay.
>
> [Appellant's Counsel]: Otherwise, you'll waive it.

N.T. Deposition, 10/29/14, at 11-12.

This line of questioning referenced a phone call Mr. Cavanaugh received from Appellant when she was having a "nervous breakdown" one

- 17 -

day before she left the Cavanaughs' marital home. *Id.* at 10-11. Shortly before the call from Appellant, Mr. Cavanaugh received a call from a police officer inquiring about Appellant's whereabouts. *Id.* A private phone conversation between a husband and his emotionally distraught wife presumptively constitutes a confidential marital communication. Appellee offers no evidence or argument against the presumption of confidentiality. The trial court erred in ordering Mr. Cavanaugh to answer this question.

Next, Appellee asked Mr. Cavanaugh about alleged criminal activity going on at CAP Glass:

> [Appellee's Counsel]: Okay. In March of 2013, did [Appellant] ever tell you of any theft that was going on at CAP Glass?
>
> [Appellee's Counsel]: Again, spousal privilege.
>
> [Mr. Cavanaugh's Counsel]: So I would instruct you not to answer.
>
> [Appellee's Counsel]: Before March of 2013, did [Appellant] ever tell you of any theft that was going on at CAP Glass?
>
> [Appellant's Counsel]: Objection.
>
> [Appellee's Counsel]: Grounds, please?
>
> [Appellant's Counsel]: Spousal privilege.
>
> [Appellee's Counsel]: And you're directing him not to answer?
>
> [Mr. Cavanaugh's Counsel]: Yes.
>
> [Appellee's Counsel]: Okay.

*Id.* at 22.

A wife's private disclosure to her husband of illegal activity occurring at her workplace presumptively is a confidential marital communication. Once again, Appellee has offered no argument or evidence to overcome that presumption. The trial court erred in compelling Mr. Cavanaugh to answer these questions.

The next contested line of questioning immediately followed the previous line:

> [Appellee's Counsel]: After leaving her employment in March of 2013, did [co-defendant Tammy L. Coffman] inform you of any theft that had taken place at Cap Glass?
>
> [Appellant's Counsel]: Same objection.
>
> [Appellee's Counsel]: Did Tammy ever communicate to you that she was angry at Shawn Pilla for any particular reason?
>
> [Appellant's Counsel]: Objection.
>
> [Appellee's Counsel]: What grounds on that one?
>
> [Appellant's Counsel]: Spousal communication.
>
> [Appellee's Counsel]: Okay. Spousal communication.
>
> [Appellant's Counsel]: Applies to anything.
>
> [Appellee's Counsel]: Okay. All right. I'm going to make a note of that one.

*Id.* at 22-23. In her brief, Appellant described this line of questioning as one in which Appellee "attempted to elicit confidential spousal communications between [Appellant] and [Mr. Cavanaugh]." Appellant's Brief at 7. We find Appellant's assertion puzzling. Appellant's brief never elaborates on why it was appropriate to invoke § 5923 to prevent Mr.

- 19 -

Cavanaugh from divulging information he received from Tammy Coffman. Inasmuch as § 5923 applies to communications from one spouse to the other, it does not apply to a communication from Tammy Coffman to Mr. Cavanaugh. The trial court correctly ruled that Appellant cannot rely on § 5923 to prevent Mr. Cavanaugh from divulging the substance of communications he received from Tammy Coffman.

Appellant's next objection came during the following line of questioning:

> [Appellee's Counsel]: Do you know whether [Appellant] informed authorities that she actually still had a good chunk of the money that she had taken from Shawn Pilla and was willing to pay that back?
>
> [Mr. Cavanaugh's Counsel]: Objection.
>
> [Appellant's Counsel]: Objection.
>
> [Mr. Cavanaugh's Counsel]: I think it's been asked and answered, actually, because he indicated she didn't tell him anything.
>
> Mr. Cavanaugh: No.

*Id.* at 45. Neither counsel specified the nature of the objection here. The question does not explicitly seek disclosure of a communication between Appellant and Mr. Cavanaugh. Furthermore, Mr. Cavanaugh answered the question. Appellant is incorrect asserting that this line of questioning implicated § 5923.

Finally, Appellant objected to the following:

> [Appellee's Counsel]: Did [Appellant] ever confess to you?

- 20 -

[Appellant's Counsel]:  Objection.

[Appellee's Counsel]:  Please state for the record the grounds.

[Appellant's Counsel]:  Same as all my objections. Spousal privilege.

[Appellee's Counsel]:  And you're directing him not to answer?

[Mr. Cavanaugh's Counsel]:  Yes.

[Appellee's Counsel]:  Okay.

*Id.* at 49-50.  Appellant's private confession to her husband, if one occurred, plainly constitutes a confidential marital communication.  *See Clark*, 500 A.2d at 443.  Appellee offers no argument to rebut the presumption that this communication was confidential.  Therefore, Appellant is entitled to the protection of § 5923.  The trial court erred in finding otherwise.

Based on all of the foregoing, we conclude that the trial court erred in ordering Mr. Cavanaugh to divulge the substance of confidential marital communications from Appellant, as set forth above.  We reverse the trial court's order insofar as it applies to confidential marital communications between Appellant and Mr. Cavanaugh.  We affirm the order insofar as it pertained to questions that did not implicate § 5923, as explained above.

Order affirmed in part and reversed in part.  Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2016