J-E01001-24

2024 PA Super 170

| | | |
|---|---|---|
| MARY KATHLEEN SMITH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THERESE T. O'BRIEN, INDIVIDUALLY AND AS  ADMINISTRATRIX OF THE ESTATE OF WILLIAM P. O'BRIEN, III, DECEASED | : | No. 837 EDA 2022 |
| | : | |
| APPEAL OF: THERESE T. O'BRIEN, AS ADMINISTRATRIX  OF THE ESTATE OF WILLIAM P. O'BRIEN, III, DECEASED | : | |

Appeal from the Order Entered January 31, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2020-18361

| | | |
|---|---|---|
| MARY KATHLEEN SMITH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THERESE T. O'BRIEN, INDIVIDUALLY AND AS  ADMINISTRATRIX OF THE ESTATE OF WILLIAM P. O'BRIEN, III, DECEASED | : | No. 838 EDA 2022 |
| | : | |
| APPEAL OF: THERESE T. O'BRIEN, INDIVIDUALLY | : | |

Appeal from the Order Entered January 31, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2020-18361


BEFORE:  LAZARUS, P.J., BOWES, J., STABILE, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., KING, J., SULLIVAN, J., and LANE, J.

OPINION BY DUBOW, J.:                    **FILED AUGUST 7, 2024**

Appellant Therese T. O'Brien ("Wife") individually and as administratrix of the estate of her husband, William P. O'Brien, III ("Husband"), appeals from the interlocutory order entered by the Montgomery County Court of Common Pleas on January 31, 2022, in which the court granted Appellee Mary Kathleen Smith's ("Appellee's") motion to compel Wife's deposition testimony regarding conversations with her now-deceased husband, rejecting Wife's assertion of the spousal confidential communications privilege, 42 Pa.C.S. § 5923. After careful consideration, we reverse the order and remand for further proceedings.

The relevant factual and procedural history is as follows. On February 26, 2020, Appellee filed a complaint against Wife, individually and as administratrix of Husband's estate, alleging battery, intentional inflection of emotional distress, and negligence based upon her claim that Husband repeatedly sexually assaulted her between 2005 and 2011, when she was between 5 and 11 years old. Appellee asserted that the assaults occurred when she stayed overnight at Husband and Wife's house, who were her former neighbors.

During Wife's October 28, 2021 deposition, counsel for Wife in her individual capacity as well as counsel for Wife in her capacity as administratrix for Husband's estate objected to questioning relating to conversations between Husband and Wife regarding Appellee's allegations of abuse. The trial court summarized the events related to the conversations as follows:

- 2 -

On March 8, 2011, the police came to the O'Brien residence and spoke to [Husband].

[Wife] spoke to her husband at the residence after the police left[,] and he told her why he was speaking to the police. [Husband] then left his residence in one of the family vehicles. [Wife] suspected that he was going to visit his brother, Barry O'Brien, in Philadelphia. [Wife] called Barry because she was concerned that her husband was going to commit suicide.

Abington Township Police came back to the O'Brien residence at approximately 7:30 p.m. that evening after [Husband] had already left. The police informed [Wife] that the matter had to do with her former neighbors, the Smiths. [Husband] telephoned his wife after the police left[,] and the two spoke.

Trial Ct. Op., 4/15/22, at 2 (citations to record omitted). Later in the evening of March 8, 2011, Barry and, subsequently, the police informed Wife that "her husband had been killed in a train accident." *Id.*

Appellee filed a Motion to Compel Further Testimony of [Wife] pertaining to conversations she had had with Husband "regarding his abuse of [Appellee]" and "his own sexual abuse." Motion to Compel, 12/1/21, at ¶¶ 21-22. The trial court granted the Motion to Compel and ordered Wife to "answer questions regarding conversations and communications between herself and [Husband] pertaining to [Appellee's] claims of child abuse." Order, 1/31/22.

On March 1 and 2, 2022, Wife filed notices of appeal individually and as administratrix of Husband's estate. Wife and the trial court complied with Pa.R.A.P. 1925. On July 18, 2022, the parties filed a stipulation for consolidation pursuant to Pa.R.A.P. 513.

Wife raises the following issues on appeal:

1. Whether the Trial Court erred in finding that the Appellant shall answer questions regarding conversations and communications between herself and her late husband, decedent William P. O'Brien, III, allegedly pertaining to Appellee's claims of child abuse, because the spousal confidential communication[s] privilege between Appellant Therese T. O'Brien and her late husband William P. O'Brien, III survived the death of Mr. O'Brien pursuant to 42 [Pa.C.S. § ]5923.

2. Whether the Trial Court erred in finding that the Appellant shall answer questions regarding conversations and communications between herself and her late husband decedent William P. O'Brien, III, allegedly pertaining to Appellee's claims of child abuse, because any conversation and communication between the Appellant and Decedent were protected by the "confidential communications privilege" pursuant to 42 [Pa.C.S. § ]5923 as the statements made by decedent to his wife were made "through the marital relationship and in the confidence that the relationship inspires" and with a reasonable expectation of confidentiality.

3. Whether the Trial Court erred in finding that the Appellant shall answer questions regarding conversations and communications between herself and her late husband decedent William P. O'Brien, III, allegedly pertaining to Appellee's claims of child abuse, because the evidentiary provisions of the Child Protective Services Law, 23 [Pa.C.S. § ]6381, do not operate to abrogate the "confidential communications privilege" pursuant to 42 [Pa.C.S. § ]5923 and are inapplicable to personal injury actions and instead only govern "child abuse proceedings in court or departmental administrative hearings."

4. Whether the Trial Court erred in finding that the Appellant shall answer questions regarding conversations and communications between herself and her late husband, decedent William P. O'Brien, III, allegedly pertaining to Appellee's claims of child abuse, because the "confidential communications privilege" is not waivable upon third party disclosure.

5. Although the Trial Court did not rule upon the issue, whether this Court should reject Appellee's demand for Appellant to answer questions regarding conversations and communications between herself and her late husband, decedent William P. O'Brien, III, allegedly pertaining to Appellee's claims of child abuse because the Pennsylvania Crime Victims Act does not impact or override the "confidential communications privilege."

6. Although the Trial Court did not rule upon the issue, whether this Court should reject Appellee's demand for Appellant to answer questions regarding conversations and communications between herself and her late husband, decedent William P. O'Brien, III, allegedly pertaining to Appellee's claims of child abuse because the Appellee's ability to prove her case is immaterial to the purpose and validity of the "confidential communications privilege."

7. Although the Trial Court did not rule upon the issue, whether this Court should reject Appellee's demand for Appellant to answer questions regarding conversations and communications between herself and her late husband, decedent William P. O'Brien, III, allegedly pertaining to Appellee's claims of child abuse because Appellee's allegations of a "social mission" are immaterial to the purpose and validity of the "confidential communications privilege."

Appellant's Br., 4/20/23, at 5.

**A.**

We first determine whether we have jurisdiction to address this appeal. "Generally speaking, an appellate court's jurisdiction extends only to review of final orders." *Shearer v. Hafer*, 177 A.3d 850, 855 (Pa. 2018). Indisputably, the trial court's order in the instant case is not a final order as it directs further discovery. Our rules, however, permit appellate review of interlocutory orders if they meet the requirements of a collateral order set forth in Pa.R.A.P. 313(b):

A collateral order is an order [1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b). Whether an order is appealable under Pa.R.A.P. 313 is a question of law. **Shearer**, 177 A.3d at 855. Accordingly, we apply a *de novo* standard of review and a plenary scope of review. **Id.**.

It is well established that "discovery orders rejecting claims of privilege and requiring disclosure constitute collateral orders that are immediately appealable under Rule 313." **Commonwealth v. Flor**, 136 A.3d 150, 155 (Pa. 2016). Indeed, this Court has specifically held that appeals from the denial of the spousal confidential communications privilege satisfies Rule 313(b). **See CAP Glass, Inc. v. Coffman**, 130 A.3d 783, 789-90 (Pa. Super. 2016). The question presented in the instant case, however, is whether Husband's death alters that analysis. As set forth below, we conclude that it does not and that the order from which Wife appeals is a collateral order pursuant to Rule 313(b).[1]

In regard to the first prong of Rule 313(b), it is undisputed that the order compelling Wife to answer questions regarding her conversations with Husband is separable from Appellee's main cause of action which seeks damages for battery, negligence, and intentional inflection of emotional distress arising from Husband's alleged abuse of Appellee. **See In re Estate of McAleer**, 248 A.3d 416, 425 (Pa. 2021) (addressing the first prong of Rule

---

[1] On November 2, 2022, this Court issued a Rule to Show Cause to determine if Wife could satisfy prongs two and three of Rule 313(b), when Husband had died. On January 19, 2023, a three-judge panel of this Court quashed the appeals finding that the order did not satisfy the collateral order doctrine due to Husband's death. On March 29, 2023, this Court granted reargument *en banc* and withdrew the January 19, 2023 opinion.

313(b) and observing that the Court has "consistently distinguished assertions of privilege from the substance of the underlying causes of action"). Accordingly, the first prong is satisfied.

For purposes of the second prong of Rule 313(b), a right may be considered "important" if it "implicate[s] interests deeply rooted in public policy and going beyond the particular litigation at hand." *Shearer*, 177 A.3d at 859 (citation and internal quotation marks omitted). The spousal confidential communications privilege meets this standard as it "has ancient origins rooted in the common law" and has been codified by the General Assembly for both civil and criminal cases. *Commonwealth v. Spetzer*, 813 A.2d 707, 717-18 (Pa. 2002) (citations omitted). "Historically, the privilege was enacted to preserve marital harmony by encouraging free marital communication, allowing spouses to confide freely, and protecting the privacy of marriage." *Commonwealth v. Hunter*, 60 A.3d 156, 159 (Pa. Super. 2013). As this Court has opined, the privilege, "with its underlying goal of protecting and promoting marital harmony, obviously qualifies" as a right too important to be denied review. *CAP Glass, Inc.*, 130 A.3d at 790.

We find no reason that the subsequent death of one spouse alters the importance of the privilege for purposes of the second prong of Rule 313(b). As noted, the purpose of the confidential communication privilege is aimed at encouraging spouses to confide in each other, without fear of forced disclosure outside the marriage. The purpose would be violated if spouses can be required to reveal their confided communications as soon as one spouse dies.

As we have previously held "[o]nce a communication between husband and wife has been made in confidence its privileged character outlasts divorce and even death[.]" ***Hunter v. Hunter***, 83 A.2d 401, 403 (Pa. Super. 1951); ***see also Cornell v. Vanartsdalen***, 4 Pa. 364, 374 (1846). The privilege thus remains too important to be denied review, even when one spouse has died.

Turning to the third prong, our courts have long recognized that, "[o]nce putatively privileged material is in the open, the bell has been rung, and cannot be unrung by a later appeal." ***Commonwealth v. Harris***, 32 A.3d 243, 249 (Pa. 2011). As applied to the spousal confidential communications privilege, the improper disclosure of privileged communications cannot be remedied with a new trial as the disclosure "cannot be undone." ***CAP Glass, Inc.***, 130 A.3d at 790. The same is true whether both spouses are alive or one is deceased: in either case, the spousal secret has been revealed outside the marriage. Thus, the third prong is satisfied.

Accordingly, we conclude that Wife's challenge to the trial court's order requiring her to disclose confidential communications with her husband constitutes a collateral order reviewable under Pa.R.A.P. 313.[2]

_____

[2] The Dissent agrees that "the spousal-communication privilege survives the end of a marriage," but nevertheless concludes that potential violation of the privilege does not justify interlocutory review. Dissenting Op. at 2. Rather, the Dissent opines that a spouse's interest in preventing the disclosure of confidential spousal communications "is no different from any party seeking to keep relevant, unfavorable evidence out of court." ***Id.*** at 5. Respectfully, while evidentiary rules keep information out of the courtroom, privileges keep information confidential within the relationship. As with other privileges based

*(Footnote Continued Next Page)*

**B.**

Wife's first four questions assert that the trial court erred in rejecting her assertion of the spousal confidential communications privilege and requiring Wife to "answer questions regarding conversations and communications between herself and [Husband] allegedly pertaining to [Appellee's] claims of child abuse." Appellant's Br., 4/20/23, at 5-6. Specifically, she asserts that the trial court erred in relying on Section 6381 of the Child Protective Services Law, 23 Pa.C.S. § 6381, as discussed in *Spetzer*, 813 A.2d at 721, to negate the spousal confidential communications privilege applicable in civil cases, as set forth in 42 Pa.C.S. § 5923. Appellant's Supplemental Br., 4/20/23, at 3.

We review Wife's challenges to the trial court's discovery order to determine "whether the trial court committed an abuse of discretion." ***Ford-Bey v. Pro. Anesthesia Servs.***, 302 A.3d 789, 795 (Pa Super. 2023) (citation omitted). To the extent her claims present "question[s] of law, such as the interpretation of a statute, our standard of review is *de novo*, and the scope of our review is plenary." ***Id.*** at 796. Courts construe privileges strictly, recognizing that "privileges contravene the fundamental principle that the public has a right to every man's evidence." ***Spetzer***, 813 A.2d at 717 (internal quotation marks, alteration, and citation omitted).

---

on confidentiality, spousal confidentiality cannot be restored merely with a new trial, but instead requires collateral review before the "bell has been rung[.]" ***Harris***, 32 A.3d at 249.

Wife asserts the spousal confidential communications privilege applicable to civil cases, which provides as follows:

> Except as otherwise provided in this subchapter, in a civil matter neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

42 Pa.C.S. § 5923.[3]  This "privilege encompasses any communications which were confidential when made and which were made during the marital relationship."  **Commonwealth v. Mattison**, 82 A.3d 386, 394 (Pa. 2013) (citations and internal quotation marks omitted).  As noted in the prior issue, the spousal confidential communications privilege "remains in effect after divorce or the death of one spouse."  **CAP Glass, Inc.**, 130 A.3d at 788; **see also Cornell**, 4 Pa. at 374 (recognizing in 1846 that the common law privilege applied when one party was "no longer in being, or has even been divorced and married to another person").

Courts presume that communications between spouses are confidential, such that "the party opposing the privilege bears the burden of overcoming this presumption."  **CAP Glass, Inc.**, 130 A.3d at 788 (citation omitted).

---

[3] Section 5914 provides the identical privilege for criminal cases, merely replacing the phrase "civil matter" with "criminal proceeding."  42 Pa.C.S. § 5914.  Our research had not revealed a distinction in the application of the civil and criminal confidential communications privileges.  In contrast, the spousal confidential communications privileges of Sections 5914 (criminal) and 5923 (civil) are "distinct" from the spousal testimonial privileges provided in Sections 5913 (criminal) and 5924 (civil) which provide that "neither husband nor wife shall be competent or permitted to testify against each other" with specified exceptions.  42 Pa.C.S. §§ 5913, 5924; **Spetzer**, 813 A.2d at 716-17 (citations omitted).

While we presume communications to be confidential, spouses nevertheless must possess "a reasonable expectation that the communication will remain confidential" in the future. *Mattison*, 82 A.3d at 394. "Whether a communication is to be considered as confidential depends upon its character as well as upon the relation of the parties." *Spetzer*, 813 A.2d at 719 (quoting *Seitz v. Seitz*, 32 A. 578 (Pa. 1895)).

In *Spetzer*, the Supreme Court concluded that a defendant's counsel was not ineffective for failing to assert the spousal confidential communication privilege to preclude the voluntary testimony of the defendant's wife concerning their communications regarding his numerous crimes.[4] The Court held that the spousal confidential communications privilege did not apply in light of the defendant's egregious actions, which included the defendant's "persistent and sadistic statements" concerning his "actual and contemplated crimes against his wife and her children." *Id.* at 721. The Court opined that the spousal privilege did not apply because the communications "did not arise from the confidence existing between the parties, but from the want of it[.]" *Id.* (citation omitted). In reaching its conclusion, the Supreme Court "[found] further support" for its conclusion that the privilege did not apply "in light of [Section] 6381 of the Child Protective Services Law" ("CPSL"). *Id.*

---

[4] The Commonwealth charged the defendant with fifty-eight criminal counts, including rape of his wife's daughter, witness intimidation, criminal solicitation, and criminal attempt in regard to his planned sexual assaults on her daughters. *Spetzer*, 813 A.2d at 711, 713.

- 11 -

Section 6381 of the CPSL provides that "the rules of evidence in this section shall govern in child abuse proceedings in court or in any department administrative hearing pursuant to section 6341 (relating to amendment or expunction of information)." 23 Pa.C.S. § 6381(a). Section 6381(c) restricts application of the spousal confidential communications privilege, instructing that "a privilege of confidential communication between husband and wife . . . shall not constitute grounds for excluding evidence at any proceeding regarding child abuse or the cause of child abuse."[5] *Id.* at § 6381(c).

The ***Spetzer*** Court found the CPSL relevant to whether a spouse has a reasonable expectation that the "communication will remain confidential." ***Spetzer***, 813 A.2d at 722. Significantly, the Court clarified that it did "not reach the broader question of whether the CPSL operates directly to modify [the confidential communications privilege] in criminal prosecutions involving the abuse of children[.]" ***Id***. Rather, the Court explained that Section 6381(c) was relevant to the spousal confidential communications privilege "in a more

_____

[5] Section 6381(c) provides in full as follows:

> Privileged communications.-Except for privileged communications between a lawyer and a client and between a minister and a penitent, a privilege of confidential communication between husband and wife or between any professional person, including, but not limited to, physicians, psychologists, counselors, employees of hospitals, clinics, day-care centers and schools and their patients or clients, shall not constitute grounds for excluding evidence at any proceeding regarding child abuse or the cause of child abuse.

23 Pa.C.S. § 6381(c).

subtle and indirect fashion" as it "affects what a spouse's 'reasonable expectation' of continued confidentiality may be with respect to marital communications[.]" *Id.* Applying this reasoning, the Court found that the husband in *Spetzer* "had no reasonable expectation that his statements to his wife concerning his previous rapes of his stepdaughter, his attempts to intimidate the witnesses in the prosecution arising from those crimes, and the further crimes he intended to commit upon his stepdaughters, would remain their 'little secret[,]'" noting that husband conceded that the challenged statements were likely used at "the Children and Youth Services matter seeking to have the children adjudicated dependent." *Id.*[6]

Following *Spetzer*, this Court addressed the interplay of Section 6381 and the spousal confidential communications privilege in *Commonwealth v. Hunter*, 60 A.3d 156 (Pa. Super. 2013). There, both the wife and husband were charged with criminal offenses arising from the wife's physical abuse of the husband's son. The wife sought to preclude admission of certain text messages she had sent to the husband regarding the child's deteriorating condition on the day of the abuse. This Court rejected application of the spousal confidential communications privilege, concluding that the privilege did not apply because the wife did not have a "reasonable expectation" that

---

[6] In light of "the obvious if indirect effect" of Section 6381(c) on the confidential communications privilege, the Supreme Court opined that "the General Assembly might wish to revisit [the spousal confidential communications privilege] and make even more explicit the limitations of the privilege." *Spetzer*, 813 A.2d at 723. Notably, however, in the two decades since *Spetzer*, the General Assembly has not acted on the Court's suggestion.

her communications would remain confidential where the texts had been in evidence in a prior child welfare hearing. *Id.* at 159-160. As in *Spetzer*, this Court expressly stated that the holding "does not go so far as to apply the CPSL's [S]ection 6381(c) exception in all criminal prosecutions involving suspected child abuse." *Id.* at 161 n.17.[7]

In the instant case, the trial court applied the *Spetzer* discussion of Section 6381 of the CPSL to conclude that Husband did not have a reasonable expectation that his communications with Wife would remain confidential, where the communications between Husband and Wife "related to [the] abuse of a child" in their care. Trial Ct. Op. at 11-12. The trial court opined that the communications relating to child abuse were not "the sensitive, marital harmony-inspiring communications contemplated by the common law authorities, or the Pennsylvania General Assembly, in erecting this privilege." *Id.* (quoting *Spetzer*, 813 A.2d at 720). In light of the circumstances presented here, we respectfully disagree with the trial court's analysis.

We reiterate that *Spetzer* expressly rejected imposition of a bright-line rule applying Section 6381's exception "to modify" the spousal confidential communications privilege in all cases involving allegations of child abuse.

---

[7] Despite this express statement, the Court, in *dicta*, questioned why the spousal confidential communications privilege of Section 5914 did not include an exception for cases involving child abuse when the spousal testimonial privilege of Section 5913, which prevents spouses from testifying adversely against each other, included an exception for cases involving child abuse. *Hunter*, 60 A.3d at 160-61. Such a determination, however, is better suited for the General Assembly than the courts.

*Spetzer*, 813 A.2d at 722. Rather, Section 6381, by its own terms, applies to "child abuse proceedings in court or in any department administrative hearing pursuant to section 6341 (relating to amendment or expunction of information)." 23 Pa.C.S. § 6381(a). Thus, Section 6381 does not directly apply to the case at bar because it is a civil case and not a child abuse proceeding under the CPSL. In contrast, the spousal confidential communication privilege enacted by the General Assembly in Section 5923 clearly and unambiguously applies to civil actions such as the instant case. 42 Pa.C.S. § 5923.

Moreover, we find that the "indirect" effect of Section 6381(c) on the "reasonable expectations" of confidentiality in spousal communications to be inapplicable to the instant case. *Spetzer*, 813 A.2d at 722. This case is distinguishable from *Spetzer* and *Hunter* where the spouses were subject to separate child abuse proceedings at which the statements had been or would be revealed. In this case, there is no indication that there was a "child abuse proceeding" under the CPSL at which Husband and Wife's communications would be revealed. Rather, the only proceeding was the current civil action which is not subject to the evidentiary rules of the CPSL, absent further legislative action as suggested in *Spetzer* and *Hunter*.

Absent application of Section 6381, this case involves the private conversation of Wife with Husband, who was "emotionally distraught" following a visit from police officers, which, as we held in *CAP Glass, Inc.*,

- 15 -

"presumptively constitutes a confidential marital communication." 130 A.3d at 793. Appellee has not overcome this presumption.

Accordingly, we conclude that the trial court erred in refusing to enforce the spousal confidential communications privilege and granting Appellee's motion to compel Wife's further testimony.[8]

## C.

For reasons set forth above, we conclude that the trial court erred in rejecting application of the spousal confidential communications privilege to Wife's conversations with Husband regarding Appellee's allegations of abuse.

---

[8] We do not address Wife's first and fourth questions as they raise errors which Wife acknowledges the trial court did not commit. In her first question, Wife implies that the trial court erred in failing to recognize that the privilege survives Husband's death. Wife, however, recognizes that the court "correctly found that [the privilege] survived her husband's death[.]" Appellant's Br., 4/20/23, at 18.; **see also** Trial Ct. Op. at 7.

Similarly, in her fourth question, Wife suggests that the trial court erred in finding the privilege waived based upon third-party disclosure. In her analysis, however, Wife acknowledges that the court "did not reach the question of whether third-party disclosure constituted a waiver of the privilege." Appellant's Br., 4/20/23, at 30-31. Indeed, the trial court found to the contrary, rejecting Appellee's claims regarding third-party disclosure to Husband's brother, finding that the record did not include "the contents" of a conversation between Husband and his brother Barry in which Appellee alleges Husband admitted abusing Appellee. Trial Ct. Op. at 3 n.1.

In her final three issues, Wife addresses policy arguments raised by Appellee before the trial court, which Appellee reiterates in this Court. We need not address Appellee's arguments, which the trial court did not address. Moreover, Appellee's policy arguments, which seek to restrict the statutory spousal confidential communications privilege, are better suited to the legislative branches, as this Court is bound by the statutory language currently enacted by the General Assembly.

Accordingly, we reverse the trial court's order compelling her testimony and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

President Judge Lazarus, Judge Bowes, Judge Stabile, Judge Nichols, Judge Sullivan, and Judge Lane join the opinion.

Judge Kunselman files a Dissenting Opinion in which Judge King joins.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/07/2024