J-E01001-24

2024 PA Super 170

| MARY KATHLEEN SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| THERESE T. O'BRIEN, INDIVIDUALLY | : | |
| AND AS ADMINISTRATRIX OF THE | : | |
| ESTATE OF WILLIAM P. O'BRIEN, III, | : | |
| DECEASED | : | |
| | : | |
| APPEAL OF: THERESE T. O'BRIEN, | : | |
| AS ADMINISTRATRIX OF THE | : | |
| ESTATE OF WILLIAM P. O'BRIEN, III, | : | |
| DECEASED | : | No. 837 EDA 2022 |

Appeal from the Order Entered January 31, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2020-18361

| MARY KATHLEEN SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| THERESE T. O'BRIEN, INDIVIDUALLY | : | |
| AND AS ADMINISTRATRIX OF THE | : | |
| ESTATE OF WILLIAM P. O'BRIEN, III, | : | |
| DECEASED | : | |
| | : | |
| APPEAL OF: THERESE T. O'BRIEN, | : | |
| INDIVIDUALLY | : | No. 838 EDA 2022 |

Appeal from the Order Entered January 31, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2020-18361

BEFORE: LAZARUS, P.J., BOWES, J., STABILE, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., KING, J., SULLIVAN, J., and LANE, J.

DISSENTING OPINION BY KUNSELMAN, J.: **FILED AUGUST 7, 2024**

As the Majority observes, Therese O'Brien appeals the trial court's

discovery order, compelling her to answer questions at a deposition about a

conversation she had with her husband shortly before his death. While I agree with the learned Majority that the spousal-communication privilege survives the end of a marriage, the basis for entertaining an interlocutory appeal from an order compelling disclosure of spousal communications does not. Thus, I believe we lack appellate jurisdiction over that pre-trial order and respectfully dissent.

The question before us is not whether the spousal-communication privilege survives the marriage; we all agree that it does. The question is whether deferring appellate review until final judgment so imperils the interest of a former marriage as to justify immediate appellate review of the discovery order. Because I believe a post-judgment appeal can adequately protect the interest of the former spouse, I would quash these interlocutory appeals.

Mrs. O'Brien argues that the discovery order is immediately appealable, as a collateral order, because it implicates a right that is too important to be denied immediate review. The right she identifies is the right to private communication within the marriage. However, she conflates the privacy interests in a professional relationship with the legislative purpose for codifying the spousal privilege at 42 Pa.C.S.A. § 5923. The reason to allow an immediate appeal in the spousal-privilege context is to protect the harmony of an existing marriage, not the privacy expectations of spouses who were formerly married. She further asserts that **Commonwealth v. Harris**, 32 A.3d 243 (Pa. 2011), controls the question of our appellate jurisdiction. In

my view, **Harris**, which dealt with the patient-psychologist privilege, is distinguishable.

Generally, in Pennsylvania "an appeal will lie only from a final order unless otherwise permitted by statute." **Pugar v. Greco**, 394 A.2d 542, 544 (Pa. 1978). "A final order is one which usually ends the litigation . . . ." **Id.** at 544–45; **see also** Pa.R.A.P. 341(b). Here, the appealed-from order is not final. It directs further discovery, rather than ends the litigation.

However, there are exceptions to the final-order rule. One exception is that an "appeal may be taken as of right from a collateral order of a trial court . . . ." Pa.R.A.P. 313(a).

A collateral order is "an order [(1)] separable from and collateral to the main cause of action [(2)] where the right involved is too important to be denied review and [(3)] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). If an order satisfies that three-pronged test, this Court may exercise appellate jurisdiction over the order, even though it is not final. **See**, **Rae v. Pennsylvania Funeral Directors Association**, 977 A.2d 1121, 1125 (Pa. 2009).

The collateral-order rule is "a specialized, practical application of the general rule that only final orders are appealable as of right." **Spanier v. Freeh**, 95 A.3d 342, 345 (Pa. Super. 2014). "As such, this Court must stringently apply the requirements of the collateral-order doctrine." **Id.** If an

order does not meet "all three prongs of the collateral-order test, this Court has no jurisdiction to consider an appeal" from that order. *Id.*

Here, the Majority concludes that all three prongs are met based on our decision in *CAP Glass, Inc. v. Coffman*, 130 A.3d 783 (Pa. Super. 2016). In *CAP Glass*, we reviewed the appealability of an order directing a husband to testify against his wife, who was a co-defendant. The bulk of that decision focused upon the first prong. We found that prong to be satisfied, because whether the spousal communications were privileged was a separate issue from the causes of action in the case.

Regarding the second and third prongs, the *CAP Glass* Court said, the "privilege protecting confidential marital communications, with its *underlying goal of protecting and promoting marital harmony*, obviously qualifies" as a right that is too important to be denied review. *Id.* at 790 (emphasis added). As Mrs. O'Brien astutely observes, the spousal-communications privilege "is based on public policy and with a view to preserve the harmony and confidence *of the relationship* between husband and wife." O'Brien Supp. Brief at 15 (quoting *Hunter v. Hunter*, 83 A.2d 401, 403 (Pa. Super. 1951) (*en banc*)). If one spouse is permitted or compelled to testify against the other during the marriage, the potential for damaging or ending their marriage is real. Thus, the purpose of allowing an immediate appeal while the spouses are still married is to protect their relationship from an improper disclosure, which could needlessly strain the relationship or even lead to a divorce.

- 4 -

In other words, it is the happiness within the spouses' relationship that the disclosure of a privileged conversation might harm or destroy. Likewise, it is that relational happiness that the privilege and collateral-order appeal are intended to protect. Obviously, such a harm cannot arise after the marriage has ended. Hence, the need for immediate appellate review is obviated after one spouse has died.

Turning to the instant case, I agree with the Majority that the first prong of the collateral-order test is met. However, the second and third prongs are not. The Majority does not address the clear distinction between an existing marriage and the absence of such need regarding a former marriage. They simply opine that the deeply rooted nature of the privilege automatically entitles the former spouse to immediate appellate review. My learned colleagues offer no analysis as to why deferring review until after final judgment would harm the former spouse or the former marriage.

Simply put, 42 Pa.C.S.A. § 5923 cannot protect or promote the marital harmony of a nonexistent marriage. With no marriage to promote or protect, in my view, the statutory privilege carries no greater weight in the collateral-order analysis than any other rule of evidence.

The only tangible interest Mrs. O'Brien has in keeping her conversation with her husband private is defending this litigation. She cannot possibly claim that this appeal is protecting or promoting their former marriage, nor does she. **See** O'Brien's Supplemental Brief at 8-10. Therefore, Mrs. O'Brien's interest in appealing the discovery order is no different from any party seeking

to keep relevant, unfavorable evidence out of court. That interest — common to all civil litigants — does not constitute a right too important to be denied immediate review under Pa.R.A.P. 313(b).

If a jury ultimately returns a verdict against her, Mrs. O'Brien may appeal from the final judgment like any other losing party without harm to her former marital relationship. Then, if this Court decided that disclosure of the spousal communication was an abuse of discretion and harmful to Mrs. O'Brien's case, we can easily remedy that harm by vacating the judgment, awarding a new trial, and excluding the evidence. Hence, whatever harm the trial court's discovery order might inflict upon Mrs. O'Brien's defense is **not** irreparable.

Finally, I find Mrs. O'Brien's reliance on **Harris**, **supra**, to be misplaced. **Harris** involved a layperson-professional privilege in a death-penalty case under the Post-Conviction Relief Act.[1] The Commonwealth sought to call the petitioner's psychologist as an expert witness against him, and the PCRA Court granted the motion. The petitioner immediately appealed. Reaffirming the general rule that orders compelling disclosure of privileged communications are collateral, the Supreme Court of Pennsylvania focused on the purpose of the layperson-professional privileges.

Those types of "privileges exist to promote frank discussions" between professionals and their patients/clients/parishioners. **Harris**, 32 A.3d at 249.

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

Not permitting an immediate appeal, in that context, might "chill such discussions," where the professional is trained on and fully aware of issues of privilege. *Id.* In particular, the *Harris* Court emphasized that, without "an immediate appeal, the possessor of putatively privileged material will repeat to others what *the client* told him or her in confidence, and, if it turns out that the claim of privilege was meritorious, a later appeal will not be able to undo the harm." *Id.* (emphasis added)..

Here, by contrast, the spousal-communication privilege does not involve the protection of a client's interests or a professional's need to engage in frank discussions to treat or counsel a client. Moreover, spouses (unlike doctors, psychologist, priests, and attorneys) are not trained on the nuances of privileges. Realistically, few couples in Pennsylvania, if any, will chill their private discussions based on the outcome of this appeal. Most spouses likely do not even know of the spousal-communication privilege, and, if they do, they almost certainly do not know the differences between a collateral-order appeal and one following final judgment. Thus, it is difficult for me to image a couple guarding their words based on whether an order compelling disclosure of such words is immediately appealable as a collateral order or must await final judgment for appellate review. Hence, the quashal of this appeal will have little to no chilling effect upon existing marriages, as it might in the context of professional privileges.

Instead, spousal privilege promotes and protects a couple's marriage from discord that disclosing communications might produce while they are

married. Therefore, the goal of the spousal privilege differs from that of the layperson-professional privileges discussed in **Harris** decision. Hence, I find that the rationale of **Harris** is limited to the facts of that case and to the layperson-professional privileges that it reviewed.

In sum, after a marriage ends, an order directing disclosure of a marital communication is not collateral. If marital communications are improperly disclosed in court, no harm or discord can befall the former marriage. Because Mrs. O'Brien's marriage has ended, the discovery order before us does not satisfy the second and third prongs of the collateral-order doctrine. **See** Pa.R.A.P. 313(b).

Thus, I conclude that we lack appellate jurisdiction over the interlocutory discovery order. Because the Majority concludes otherwise and addresses the merits of Mrs. O'Brien's interlocutory appeals, I respectfully dissent.

Judge King joins in this dissent.